YOUAKIM ET AL. *v.* MILLER, DIRECTOR, DE-
PARTMENT OF CHILDREN AND FAMILY
SERVICES, ET AL.

No. 73–6935.  Argued December 8, 1975—Decided March 31, 1976

*Patrick A. Keenan* argued the cause and filed briefs for appellants.

*Paul J. Bargiel,* Assistant Attorney General of Illinois, argued the cause for appellees.  With him on the brief was *William J. Scott,* Attorney General.

Per Curiam.

As part of the federal Aid to Families with Dependent Children (AFDC) program, 42 U. S. C. § 601 *et seq.*, the State of Illinois provides federally subsidized foster care (AFDC–FC) payments of $105 per month for a dependent child placed with unrelated foster parents. Under Illinois' administration of the program no foster care payments are made to foster parents who are related to the foster child. Related foster parents are eligible, however, to receive payments under the State's regular AFDC program for the support of dependent children in the amount of $63 per month. These payments are made without regard to the financial circumstances of the family caring for the child. In addition, as an exception to the State's regular policy, related foster parents, upon an adequate showing of financial need, may receive supplemental payments for child care which bring the payments in connection with the related foster child to approximately $105 per month.

Appellants are Linda Youakim and her husband, Marcel, and Linda's four minor brothers and sisters, Timothy, Mary Lou, Larry, and Sherry Robertson. Since 1972, the Youakims have been foster parents of Timothy and Mary Lou. Larry and Sherry have been living in separate, unrelated foster care facilities since 1969. Because Linda is related to Timothy and Mary Lou, the Youakims were ineligible for AFDC–FC foster care payments. They did apply for and receive the smaller AFDC payments for both children. Alleging injury resulting from financial inability to provide adequate care for Timothy and Mary Lou and to bring Larry and Sherry into their foster family, appellants filed suit in the District Court against the state officials on behalf of themselves and all other persons similarly situated. Their complaint described the suit as an action to enjoin

enforcement of the foster care payment scheme on the ground that it denied related foster families the equal protection of the laws and likewise discriminated against wards of the State and relatives who could not provide an adequate foster home without full foster care payments. They asked that a three-judge District Court convene and enjoin the enforcement of the Illinois statutes and regulations.

The three-judge court "approved" the Fed. Rule Civ. Proc. 23 (b)(2) class, granted appellees' motion for summary judgment, and ultimately held that the "Illinois scheme does not deny plaintiffs equal protection of the laws." 374 F. Supp. 1204, 1210 (ND Ill. 1974). The jurisdictional statement filed here expressly challenged the Illinois scheme both on equal protection grounds and on the ground of conflict with the Social Security Act. We noted probable jurisdiction. 420 U. S. 970 (1975).

Although the jurisdictional statement as to which we noted probable jurisdiction presented the question of conflict between the Illinois law and the Social Security Act, it appears that the Supremacy Clause claim was not presented to the District Court as an independent ground for invalidating the state law. The complaint described the suit as one seeking an injunction on equal protection grounds. The sole ground for relief expressly claimed in each of the three causes of action which the complaint purported to allege, as well as in the prayer for relief, was that the Illinois program denied appellants equal protection of the laws. It does not appear from the record in the District Court that as the case developed appellants rested on the Supremacy Clause as a separate basis for their injunction claim. Nor did the District Court address the relationship between state and federal law independently of the equal protection issue.

Ordinarily, this Court does not decide questions not raised or resolved in the lower court. *California* v. *Taylor,* 353 U. S. 553, 557 n. 2 (1957); *Lawn* v. *United States,* 355 U. S. 339, 362–363, n. 16 (1958). But as *Pollard* v. *United States,* 352 U. S. 354, 359 (1957), and *Brotherhood of Carpenters* v. *United States,* 330 U. S. 395, 412 (1947), for example, demonstrate, the rule is not inflexible. Cf. *Boynton* v. *Virginia,* 364 U. S. 454, 457 (1960). Its usual formulation is: "It is only in exceptional cases coming here from the federal courts that questions not pressed or passed upon below are reviewed." *Duignan* v. *United States,* 274 U. S. 195, 200 (1927). Here, as we shall describe, the circumstances justify our dealing with the issue of conflict between state and federal statutes at least to the extent of vacating the judgment below and remanding the case for consideration of the claim that the Illinois foster care program is in conflict with the Social Security Act.

Initially, it should be noted that the statutory issue is not foreign to the subject matter of the complaint. Attacks on state welfare statutes often combine Equal Protection Clause and Supremacy Clause issues. The latter question could surely have been pursued under the complaint filed in this case, which, as part of the "facts" incorporated by reference in each of the three causes of action, alleged that the Illinois program was in conflict with the policy of the United States expressed in subchapter IV of the Social Security Act, 49 Stat. 627, as amended, 42 U. S. C. § 601 *et seq.,* specifically with the federal policy of encouraging the care of children in their own homes or in the homes of relatives wherever possible.

It is also apparent that the District Court was of the view that under *Townsend* v. *Swank,* 404 U. S. 282 (1971), "serious equal protection problems" might arise if "a state attempts to rely on the concept of fiscal

integrity to limit beyond statutory standards the class eligible to receive federally subsidized payments." 374 F. Supp., at 1210. For this reason, the District Court compared federal and state law, and concluded: "Far from being inconsistent with the federal scheme, the Illinois scheme in general seems to parallel it. . . . Thus the federal statute makes the same classification as the Illinois statute." *Ibid.* Had appellants relied on the Supremacy Clause issue as a separate ground for decision it would appear that the claim would have been rejected by the District Court. In light of these circumstances, the case is at most only marginally subject to the rule that this Court will not consider issues "not pressed or passed upon" in the court below.

Beyond these considerations, on October 25, 1974, after the filing of the jurisdictional statement but before we noted probable jurisdiction, the Department of Health, Education, and Welfare issued Program Instruction APA–PI–75–9 stating that under the controlling federal law, "[w]hen a child has been removed from his home by judicial determination and is placed in foster care under the various conditions specified . . . , the foster care rate of payment prevails regardless of whether or not the foster home is operated by a relative." Also, in response to appellants' jurisdictional statement, the Solicitor General filed a statement in this Court urging that the Illinois foster care program was inconsistent with the Social Security Act insofar as it provided higher payments to unrelated foster parents than to those who were related. Neither the appellants nor the District Court had the benefit of either of these developments when the case was in the lower court. The interpretation of a statute by an agency charged with its enforcement is a substantial factor to be considered in construing the statute, *New York Dept. of Social Services* v. *Dublino,*

413 U. S. 405, 421 (1973); *Columbia Broadcasting System, Inc.* v. *Democratic Comm.,* 412 U. S. 94, 121 (1973); *Investment Co. Institute* v. *Camp,* 401 U. S. 617, 626–627 (1971); and appellants [1] now wish to press the issue of conflict between state and federal law. We think that it is appropriate to afford them the opportunity to do so, but that the claim should be aired first in the District Court. Vacating the judgment and remanding the case for this purpose will require the District Court first to decide the statutory issue, *Hagans* v. *Lavine,* 415 U. S. 528 (1974), and if appellants prevail on that question, it will be unnecessary for either the District Court or this Court to reach the equal protection issue at all. A remand is thus consistent with our usual practice of avoiding decisions on constitutional matters if a case may be resolved on other grounds. [2]

---

[1] The appellee state officials have met both of appellants' claims on the merits and have not sought to restrict our review to the equal protection issue.

[2] From papers lodged with the Court, it appears, and appellants do not dispute, that since September 1, 1974, the Youakims have been receiving need-based payments supplementing the AFDC payments for Timothy and Mary Lou. They now receive monthly payments totaling $105, the same amount they would receive under the AFDC–FC program. Their receipt of these payments does not moot the case. The complaint alleged that ineligibility for regular foster care payments had precluded the Youakims "from even considering accepting for foster care the [two] other family members" who are living with nonrelatives in other foster care facilities. App. 12. Were it not for the Illinois program, they allege, the Youakims could seek to bring Larry and Sherry into their foster home and would receive the same monthly $105 AFDC–FC payments per child received as a matter of course by the foster care facilities now caring for Larry and Sherry without any showing of need and without applying for need-based funds supplementing the $63 AFDC payments. Whatever its strength, the Youakims' claim that it is unlawful to require them to demonstrate need and to rely on an exception to policy in order to receive the same child care payments is not mooted

The action we take here is similar to the order the Court entered in *Thorpe* v. *Housing Authority,* 386 U. S. 670 (1967). There, rather than deciding the constitutionality of an eviction from a public housing project, the Court remanded the case for reconsideration in light of a supervening administrative directive which was issued by federal authorities and which it was thought might provide a nonconstitutional basis for decision. Cf. *Richardson* v. *Wright,* 405 U. S. 208, 209 (1972).

The judgment of the District Court is vacated, and the case is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

---

by current receipt of larger payments for Timothy and Mary Lou who are living in the Youakim home. Because we conclude that the case is not moot as to the Youakims, we need not decide whether the District Court properly identified the Rule 23 (b) (2) class, compare *Sosna* v. *Iowa,* 419 U. S. 393 (1975), with *Indianapolis School Comm'rs* v. *Jacobs,* 420 U. S. 128 (1975), so that the class action might be maintained notwithstanding mootness as to the named plaintiffs, or whether appellant Linda Youakim properly sued as "next friend" of her four brothers and sisters, see Fed. Rule Civ. Proc. 17 (c), so that their constitutional interests could be adjudicated by the court.