Walter and Maria GREEN, on behalf of themselves and their minor children, on behalf of themselves and others similarly situated, and Pat Walker, Plaintiff-Intervenor,

v.

Paul R. PHILBROOK, Commissioner of the Vermont Department of Social Welfare and David Mathews, Secretary of the Department of Health, Education and Welfare.

Civ. A. No. 75–232.

United States District Court, D. Vermont.

Feb. 24, 1977.

quire indigent children and their parents or guardians to obtain Social Security Account Numbers ("SSN's") and furnish them to the government as a condition of eligibility for family welfare assistance. The regulations are said to conflict with provisions of the Social Security Act of 1935, as amended, and the Privacy Act of 1974, and to violate the plaintiffs' constitutional rights to privacy and equal protection. The comparatively simple factual situation underlying the case is not in dispute.

Plaintiffs Walter and Maria Green live in Norton, Vermont, with their three minor children, on whose behalf they bring this suit. At the time the complaint was filed in October, 1975, the Greens were recipients of assistance from the Vermont Department of Social Welfare under the federal-state program of Aid to Needy Families with Children—Unemployed Fathers ("ANFC").[1] They were notified by agents of defendant Philbrook, the Commissioner of the Vermont Department of Social Welfare, that they would be required to supply SSN's for themselves and their three children as a condition of continued assistance in November, 1975. Since the children did not possess SSN's at the time, the Greens were required to apply for numbers and then supply them to the State. The adult plaintiffs were willing to furnish the Department with their numbers, but were unwilling to obtain or furnish SSN's for the children. They believed that to supply the Government with SSN's for their children would "invade the children's right to privacy, . . . inflict a stigma on [them] and . . . subject [them] to something that is not of their own choosing, which they might regret when they become of age." This suit was commenced to enjoin the termination of their welfare benefits, to invalidate the regulations that require the reporting of the children's SSN's, and to recover damages equal to the total monthly benefits denied them due to the termination of ANFC benefits pursuant to the challenged regulations.

Zander B. Rubin, Vermont Legal Aid, Inc., St. Johnsbury, Vt., for plaintiffs.

Georgiana Miranada, Asst. Atty. Gen., Montpelier, Vt., for defendant Philbrook.

Robert P. Jaye, Deputy Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and John R. Hughes, Jr., Asst. U. S. Atty., Rutland, Vt., for defendant Mathews.

## OPINION AND ORDER

COFFRIN, District Judge.

This case presents a challenge to state and federal welfare regulations which re-

---

1. There is no need in this opinion to distinguish the Aid to Needy Families with Children-Unemployed Fathers sub-program from the basic ANFC program.

Plaintiff-intervenor Pat Walker was placed in the same position as the Greens by the regulations in question. She was notified by the Vermont Department of Social Welfare that ANFC benefits for herself and her five minor children would be terminated in November, 1975, unless the SSN's of each family member were supplied to the Department by that time. Like the Greens, Mrs. Walker was willing to furnish her own SSN, but not those of her children. She alleges that she "felt this [furnishing the SSN's] to be a decision the children should make when they become of age, and that it would stigmatize the children and allow them to be tracked, and would otherwise invade their right to privacy."

Requests by the plaintiffs and the intervening plaintiff for a temporary restraining order enjoining the termination of their benefits were denied by this Court following a hearing on October 29, 1975. Since the denial of the temporary restraining order, the Greens, electing to stand by their original position, have refused to apply for SSN's for their children. They have been terminated as recipients of ANFC. Mrs. Walker, however, has furnished her children's numbers to the Department in order to continue her assistance payments, but has done so, according to the allegations in her amended complaint, "under protest and solely because she had no other alternative." She has also amended the complaint to include requests that all government records of her children's SSN's be destroyed if she succeeds on the merits of this suit.

The case now is before the Court on cross-motions for summary judgment filed by the plaintiffs, who have sought class certification, and by defendant Mathews. Plaintiffs restrict their motion to the statutory claims, since they believe that additional facts are necessary to decide the constitutional claims. Plaintiffs do, however, urge that their constitutional claims are "not insubstantial" and that, therefore, they should be heard by a three-judge court if

necessary.[2] Defendant Philbrook has not moved to join or to oppose the summary judgment motions. As none of the material facts summarized above are disputed, the case is ready for a determination of the statutory claims under Rule 56 of the Federal Rules of Civil Procedure. Defendant Mathews, in addition, has moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Before turning to the substantive issues raised by the cross-motions for summary judgment, the Court will touch upon defendant Mathews' motion to dismiss on jurisdictional grounds, and the issue of class certification.

■■ At the outset of this litigation jurisdiction over the federal defendant was a matter both strenuously contested and difficult of resolution. However, effective October 21, 1976, Congress amended federal question jurisdiction, 28 U.S.C. § 1331(a), by deleting the $10,000 amount in controversy requirement where the action is brought against the United States, its agencies, or any officer or employee thereof acting in his official capacity. Pub.L.No. 94–574, § 2 (Oct. 21, 1976). The amendment is remedial in nature, see H.R.Rep.No.1656, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin. News 1976, p. 6121, and it is intended to fill what has been termed "an unfortunate gap in the statutory jurisdiction of the federal courts," *Wolff v. Selective Service Local Board No. 16,* 372 F.2d 817, 826 (2d Cir. 1967). Thus, we think it proper to apply the amendment retroactively to grant jurisdiction over the defendant Secretary of Health, Education and Welfare even if there was no jurisdiction initially. *Larkin v. Saffarans,* 15 F. 147 (C.C.W.D.Tenn. 1883). In any event, were we to dismiss against the federal defendant now, the plaintiffs would be able to renew their action by refiling under the amended statute. The Court can envision no logical reason to require such a Sisyphean process. Jurisdiction over the state defendant is properly predicated upon 28 U.S.C. § 1343.

---

**2.** The action was commenced prior to the repeal of 28 U.S.C. §§ 2281, 2282, and the amendment of 28 U.S.C. § 2284. Pub.L.No. 94–381 (Aug. 12, 1976). For that reason the constitutional claim urged by the plaintiffs would still require a hearing before a three-judge court.

■ Another preliminary matter before the Court is the possible certification of a plaintiff class. The Court notes that neither party has moved for either the grant or denial of class certification under Fed.R. Civ.P. 23(c)(1). More particularly the plaintiffs have not moved for such a determination, as is required by Local Rule of Civil Procedure No. 11(3). In this regard, the Court is of the opinion that this issue cannot adequately be decided on the basis of the class action allegations in the complaints, the state defendant's general denials and the one page of the federal defendant's memorandum in contravention of the class action allegations. We, therefore, disregard the class action allegations and proceed to the merits. *See Yulio v. Moore-McCormack Lines, Inc.,* 387 F.Supp. 872, 877 (S.D.N.Y.1975); *Glodgett v. Betit,* 368 F.Supp. 211, 213–14 (D.Vt.1973), *aff'd,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975).

Vermont's ANFC program is a State welfare program benefiting from federal financial participation under Title IV–A of the Social Security Act of 1935, 42 U.S.C. §§ 601–09, which is entitled Aid to Families with Dependent Children ("AFDC"). In order to qualify for the receipt of federal funds the ANFC program must meet all requirements set forth in 42 U.S.C. § 602(a) and implementing federal regulations and policies. 42 U.S.C. §§ 602(b), 603; 45 C.F.R. §§ 201.2, –.3. The regulations challenged in this action implement § 402(a)(25) of the Social Security Act, 42 U.S.C. § 602(a)(25), which was added to the Social Security Act by the Social Services Amendments of 1974. Pub.L.No. 93–647, § 101(c)(5)(C), 88 Stat. 2337. 42 U.S.C. § 602(a)(25) reads as follows:

(a) A State plan for aid and services to needy families with children must . . . . (25) provide (A) that, as a condition of eligibility under the plan, each applicant for or recipient of aid shall furnish to the State agency his social security account number (or numbers, if he has more than one such number), and (B) that such State agency shall utilize such account numbers, in addition to any other means of identification it may determine to employ in the administration of such plan.

The provision was apparently designed to serve "[a]s an additional tool in pursuing missing parents and to simplify the administration of the AFDC and Child Support Programs." S.Rep.No.1356, 93d Cong. 2d Sess., 4 [1974] U.S.Code Cong. & Admin. News p. 8152. The Child Support Program, also added by the 1974 Social Services Amendments, was designed to provide more effective methods of locating absent parents, establishing paternity and obtaining child support. 42 U.S.C. § 651.

The regulations promulgated by HEW to implement the statutory additions to 42 U.S.C. § 602(a) are contained principally in Part 232 of Title 45 of the Code of Federal Regulations. They became effective July 1, 1975. The focus of the dispute in this case is 45 C.F.R. § 232.10, which provides in pertinent part as follows:

The State plan must provide that:

(a) As a condition of eligibility, each applicant for or recipient of aid will be required:

(1) To furnish to the State or local agency a social security account number, hereinafter referred to as an SSN (or numbers, if more than one has been issued); and

(2) If he cannot furnish an SSN (either because such SSN has not been issued or is not known), to apply for such number through procedures adopted by the State or local agency with the Social Security Administration. If such procedures are not in effect, the applicant or recipient shall apply directly for such number, submit verification of such application, and provide the number upon its receipt.

\*     \*     \*     \*     \*     \*

(e) The State or local agency will use such account numbers, in addition to any other means of identification it may determine to employ, in the administration of the plan.

(f) "Applicant" and "recipient" include the caretaker relative, the children, and any other individual whose needs are con-

sidered in determining the amount of assistance.

This requirement, because it was promulgated as a regulation under the authority of one of the criteria contained in 42 U.S.C. § 602(a), must be met in order for the Vermont Department of Social Welfare to obtain HEW approval of its ANFC program and the consequent grant of federal funds. 42 U.S.C. §§ 602(b), 603; 45 C.F.R. §§ 201.2, -.3; *King v. Smith,* 392 U.S. 309, 317, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Accordingly, in view of 45 C.F.R. § 232.10, the following provision was added to the ANFC eligibility requirements contained in the Department's Welfare Assistance Manual, effective August 1, 1975:

*Obtaining Social Security Numbers*

The department will notify the applicant or recipient that the Social Security number will be utilized in the administration of the ANFC program.

Refusal to furnish the Social Security numbers or refusal to apply for Social Security numbers for any applicant/recipient shall make the family ineligible for assistance.

The department will assist applicants to apply for Social Security numbers and will not delay, deny or discontinue assistance during the issuance and verification of such numbers.

Vermont Department of Social Welfare, Bulletin No. 75–99, § 2303.

The plaintiffs contend that the federal and state regulations are not consistent with the provisions of 42 U.S.C. § 602(a)(25), upon which they are based, since the regulations require ANFC-benefitted children, as well as the caretaker relatives, to apply for and furnish SSN's. They also claim that enforcement of the regulations violates § 7 of the Privacy Act of 1974, 5 U.S.C. § 522a Note, which makes it unlawful for government agencies to withhold benefits because of an individual's refusal to disclose his SSN, unless the disclosure is required by federal statute. The plaintiffs contend alternatively that if the regulations are not in conflict with the federal statutes, they must fall under the Constitution.

■ We first consider the statutory argument that the regulations in question are inconsistent with the grant of authority contained in 42 U.S.C. § 602(a)(25). It is settled law that the Secretary's regulations are entitled to great deference by the courts. *See, e. g., Youakim v. Miller,* 425 U.S. 231, 235, 96 S.Ct. 1399, 1402, 47 L.Ed.2d 701 (1976); *Department of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Lewis v. Martin,* 397 U.S. 552, 559, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). Furthermore, the regulations must be upheld unless they are "inconsistent" with the statute. 42 U.S.C. § 1302.[3]

The determination whether the regulations are inconsistent with the statute depends entirely upon the Court's construction of the words "applicants for or recipients of aid," as used in 42 U.S.C. § 602(a)(25). If we determine that Congress intended those words to include *only* "caretaker relatives" who apply for or receive AFDC *on behalf of* "dependent children," and not the children themselves, then HEW's interpretation of the statute in 45 C.F.R. § 232.10 would be inconsistent, and therefore invalid, as not authorized by 42 U.S.C. § 1302. Commonly accepted tenets of statutory construction lead to the conclusion that dependent children are not "applicants for or recipients of aid," as those terms are used in 42 U.S.C. § 602(a)(25), and that, therefore, 45 C.F.R. § 232.10 is inconsistent with § 602(a)(25). Although the focus of this discussion is on 45 C.F.R. § 232.10, it is clear that if that regulation should fall as being inconsistent with the statute, the state regulation to the same effect must fall to the extent that it applies to children benefitted by ANFC.

---

**3.** The regulations could also be invalidated if they were not "reasonably related to the purposes of the enabling legislation." *Thorpe v. Housing Authority,* 393 U.S. 268, 280–81, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Serritella v. Engelman,* 462 F.2d 601, 602 (3d Cir. 1972). Plaintiffs do not, however, claim the regulations to be invalid on that ground.

■ The same subsection of the Social Services Amendments of 1974 which added 42 U.S.C. § 602(a)(25) also added 42 U.S.C. § 602(a)(26). In pertinent part the latter reads:

(26)· . . . each applicant or recipient will be required—

(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid . . . .

(B) To cooperate with the State . . . (ii) in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed, or in obtaining any other payments or property due such applicant or such child . . . .

In 42 U.S.C. § 602(a)(26), Congress used the terms "applicant" and "recipient" in a manner which distinguishes caretaker relatives—the individuals who "apply for and receive aid"—from the dependent children in their care. It would be illogical, therefore, to interpret the identical words, when used in § 602(a)(25), in a fashion different from that employed in its sister statute § 602(a)(26). Moreover, it is a cardinal rule of statutory construction that words and phrases found in different sections of related statutory material should be interpreted to avoid inconsistencies, particularly when a reasonable interpretation can be adopted which will not do violence to the plain words of the act, and will carry out the intentions of Congress. *United States v. Raynor,* 302 U.S. 540, 547, 58 S.Ct. 353, 82 L.Ed. 413 (1938). This rule is based upon the practical experience that "a legislative body generally uses a particular word with a consistent meaning in a given context," *Erlenbaugh v. United States,* 409 U.S. 239, 244, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972). The rule would appear to have particular applicability where identical phrases are used in two closely related passages passed by the same legislature at the same time.

■ It should be noted that it would not "do violence to the plain words of the act"

or frustrate Congressional intent, to interpret § 602(a)(25) in a manner consistent with § 602(a)(26). Ordinarily, the person who "applies for or receives aid" on behalf of an indigent, AFDC-eligible family will be the caretaker relative, and it is he, not the child, who may later be the "missing parent" who is pursued in accordance with the Child Support Program. Also, for purposes of numerically identifying an AFDC family group—in order to simplify the administration of the AFDC program—it would appear sufficient to have one SSN for the entire group. Thus, we conclude that the terms "recipient" and "applicant" as used in 42 U.S.C. § 602(a)(25) may not be interpreted to include children receiving benefits from the AFDC programs.

Our conclusion finds further support in two additional factors. First, in dealing with a similar situation where benefits may be received on behalf of children under the Social Security Act, Congress acted very deliberately with regard to the assignment of SSN's to such children. In 42 U.S.C. § 405(c)(2)(B)(i)(II) Congress directed the Secretary to take affirmative measures to assure that SSN's were assigned "to any individual who is an applicant for or recipient of benefits under *any program financed in whole or in part from Federal funds including any child on whose behalf* [Social Security] benefits are claimed by another person." Here Congress did not deliberately provide that benefitted children must obtain and provide SSN's, although it clearly has recognized the need to *expressly* deal with a similar situation in the context of the Social Security Act.

Secondly, Congress itself, by the enactment of § 7 of the Privacy Act of 1974, indicated that the disclosure of an SSN is not a trivial precondition to any benefit provided by law. Rather, § 7 makes it unlawful for any governmental agency to deny anyone such benefits on account of the failure to disclose his SSN unless the disclosure is required by federal law. We mention § 7 in this context merely to demonstrate Congress' intention of avoiding unwarranted disclosure of SSN's. Such an

intent buttresses our conclusion that if Congress wished to require SSN's from children benefitted by AFDC programs it would have done so explicitly. This inference is particularly strong in light of the fact that the same session of the same Congress enacted both the Social Services Amendments of 1974 and the Privacy Act of 1974.

The plaintiffs also argue that the regulations here in issue specifically violate § 7 of the Privacy Act. The plaintiffs' argument may be valid; however, a finding on this issue is not necessary to the Court's decision and we do not so rule.

As noted earlier, one purpose of the requirements of 42 U.S.C. § 602(a)(25) was "to simplify the administration of the AFDC and Child Support Programs." The Court is not unsympathetic to the Government's arguments that the administrative efficiency of the AFDC and other federal programs will be adversely affected by today's decision. We agree, but nonetheless the Government has directed its arguments to the wrong forum. Only Congress has the ability to impose or to authorize the imposition of the requirements of § 602(a)(25) upon the plaintiffs' children. In the Court's opinion, Congress has not yet done so.

Finally, in view of the Court's decision on the statutory issue in this matter, we do not reach the question of whether plaintiffs' constitutional claims are "insubstantial," under the standard articulated in *Hagans v. Lavine,* 415 U.S. 528, 537–39, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). It would be inappropriate for us to do so now. *See Youakim v. Miller,* 425 U.S. 231, 236, 96 S.Ct. 1399, 1402, 47 L.Ed.2d 701 (1976).

Accordingly, the individual plaintiffs' motion for summary judgment is hereby granted and, correspondingly, the federal defendant's motion to dismiss or, alternatively, for summary judgment is denied. Further, the parties to this litigation are hereby directed to submit to this Court, within thirty days of the date hereof, a judgment order upon which they agree and which is in accordance with this opinion. Should the parties be unable to agree as to the damages to which the plaintiffs Walter and Maria Green are entitled, the Court will schedule a hearing thereon upon request of counsel for the parties made within thirty days from the date hereof.

It is so ORDERED.