Walter and Maria GREEN, on behalf of themselves and their minor children, on behalf of themselves and other persons similarly situated, Plaintiffs-Appellees-Appellants,

and

Pat Walker,
Plaintiff-Intervenor-Appellee-Appellant,

v.

Paul R. PHILBROOK, Commissioner of the Vermont Department of Social Welfare, Defendant,

and

Joseph A. Califano, Jr., Secretary of the Department of Health, Education and Welfare, Defendant-Appellant-Appellee.

Nos. 333 and 1077, Dockets 77–6102 and 77–6115.

United States Court of Appeals, Second Circuit.

Argued Jan. 6, 1978.

Decided May 9, 1978.

Zander B. Rubin, Vermont Legal Aid, Inc., St. Johnsbury, Vt., for plaintiffs-appellees-appellants.

Michael F. Hertz, Dept. of Justice, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Dept. of Justice, Leonard Schaitman, Dept. of Justice, Washington, D. C., George W. F. Cook, U. S. Atty., Rutland, Vt., of counsel), for defendant-appellant-appellee.

Before KAUFMAN, Chief Judge, and TIMBERS and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

The Secretary of Health, Education and Welfare appeals from a judgment order entered in the United States District Court for the District of Vermont, Albert W. Coffrin, *Judge,* declaring invalid federal and state regulations which require children to obtain and furnish Social Security Account Numbers (SSN's) as a condition of eligibility for assistance from the Vermont Department of Social Welfare under the federal-state program of Aid to Families with Dependent Children (AFDC). 42 U.S.C. §§ 601 to 611; Vt.Stat.Ann. tit. 33, §§ 2701 to 2704; 45 C.F.R. § 232.10(f); Vermont Welfare ·Assistance Manual § 2303. The district court held that the regulations were invalid under 42 U.S.C. § 1302 because they were found to be inconsistent with 42 U.S.C. § 602(a)(25). Jurisdiction over the federal defendant is based on 28 U.S.C. § 1331(a) and over the state defendant on 28 U.S.C. § 1343. The court's decision is reported at 427 F.Supp. 834 (D.Vt.1977). We reverse and remand.

The facts are not in dispute. Walter and Maria Green live in Norton, Vermont, with their three children. When this action began in October, 1975, their only income was the $320 per month they received from Vermont's AFDC-assisted program called Aid to Needy· Families with Children (ANFC). The Greens were told by the Vermont Department of Social Welfare that they and their children were required by federal and state regulations to submit SSN's as a condition of continued assistance. Mr. and Mrs. Green were willing to comply as far as their own SSN's were concerned, but they refused to obtain or furnish SSN's for their children, believing that to do so would be "to invade the children's right to privacy, and to inflict a stigma on the children and to subject the children to something that is not of their own choosing, which they might regret when they become of age." Pat Walker, also a resident of Vermont, has custody of five minor children. She, too, was notified by the Department that her monthly ANFC payments of $439 would be terminated unless SSN's for each member of her family were supplied.

The Greens and Walker sought injunctive and declaratory relief in federal court. They argued that the regulations conflicted with the Social Security Act of 1935 and the Privacy Act of 1974 and operated in such a way as to deprive them of their constitutional rights to privacy and equal protection. On October 29, 1975, the district court denied their motion for a temporary restraining order enjoining the termination of benefits. The Greens remained steadfast and refused to apply for SSN's for their children; their benefits were terminated. Walker, on the other hand, furnished SSN's for her children "under protest and solely because she had no alternative."

In April, 1976, the Greens and Walker moved for summary judgment solely with respect to their statutory claims. The district court granted this motion, finding essentially that, although the Green and Walker children were the beneficiaries of Vermont's program, they were neither "applicants" nor "recipients" under 42 U.S.C. § 602(a)(25) and were therefore not required to provide SSN's. The court issued a judgment order that (1) declared the regulations invalid, (2) enjoined the defendants from requiring SSN's from ANFC-benefited Vermont children, (3) awarded the Greens an amount equal to the benefits denied them, and (4) expunged the SSN's of the Walker children from AFDC/ANFC records. It is from this judgment order that the Secretary appeals.[1]

---

1. The State of Vermont also filed a notice of appeal from this judgment order, but, for reasons unrelated to the merits of this dispute, that appeal was dismissed by this Court.

**442**

## DISCUSSION

Vermont's ANFC program receives federal financial assistance under Title IV–A of the Social Security Act of 1935, as amended, 42 U.S.C. §§ 601 to 611. In order to receive this federal funding, Vermont must comply with the federal statute and with rules and regulations promulgated by the Secretary for its implementation. *See King v. Smith,* 392 U.S. 309, 316–17, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Section 602(a)(25) of the federal statute provides that:

> A State plan for aid and services to needy families with children must . . . (25) provide (A) that, as a condition of eligibility under the plan, each applicant for or recipient of aid shall furnish to the State agency his social security account number (or numbers, if he has more than one such number), and (B) that such State agency shall utilize such account numbers, in addition to any other means of identification it may determine to employ in the administration of such plan.

The Secretary has defined the terms "applicant" and "recipient" to "include the caretaker relative, the children, and any other individual whose needs are considered in determining the amount of assistance." 45 C.F.R. § 232.10(f).[2] In order to comply with the requirements of the federal statute and regulations, Vermont added the following eligibility provisions to its Welfare Assistance Manual on August 1, 1975:

*Obtaining Social Security Numbers*

2. The relevant portions of the regulation are as follows:

> The State plan must provide that:
>
> (a) As a condition of eligibility, each applicant for or recipient of aid will be required:
>
> (1) To furnish to the State or local agency a social security account number, hereinafter referred to as the SSN (or numbers, if more than one has been issued); and
>
> (2) If he cannot furnish a SSN (either because such SSN has not been issued or is not known), to apply for such number through procedures adopted by the State or local agency with the Social Security Administration. If such procedures are not in effect, the applicant or recipient shall apply directly for such number, submit verification of such application, and provide the number upon its receipt.

The department will notify the applicant or recipient that the Social Security number will be utilized in the administration of the ANFC program.

Refusal to furnish the Social Security numbers or refusal to apply for Social Security numbers for any applicant/recipient shall make the family ineligible for assistance.

The department will assist applicants to apply for Social Security numbers and will not delay, deny or discontinue assistance during the issuance and verification of such numbers.

Although the state regulations contain no express definition of the terms "applicant" and "recipient," the state authorities have used the definition found in 45 C.F.R. § 232.10(f).

■ Under 42 U.S.C. § 1302, the Secretary is empowered to "make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which [he] is charged under this chapter." The Greens and Walker did not argue that the regulations were not reasonably related to the purposes of the legislation. *See* 427 F.Supp. 838 n.3. Thus, as the district court determined, the issue in this case is whether the definition in 45 C.F.R. § 232.10(f) is "inconsistent" with 42 U.S.C. § 602(a)(25) and therefore invalid as not authorized by 42 U.S.C. § 1302. The district court's analysis of the question was correct; its conclusion was not.

\*   \*   \*   \*   \*   \*

> (e) The State or local agency will use such account numbers, in addition to any other means of identification it may determine to employ, in the administration of the plan.
>
> (f) "Applicant" and "recipient" include the caretaker relative, the children, and any other individual whose needs are considered in determining the amount of assistance.
>
> (g) The State or local agency shall notify the applicant or recipient that the furnishing of the SSN is a condition of eligibility for assistance required by section 402(a)(25) of the Social Security Act and that the SSN will be utilized in the administration of the AFDC program.

"The starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, *J.,* concurring). Here, the statute requires the furnishing of SSN's by "each applicant for or recipient of aid." The ordinary meaning of the words "recipient of aid" would seem quite naturally to include the very children for whose benefit the assistance program was created. Thus, there is nothing in the language of the statute itself which suggests that it would be "inconsistent" for the Secretary to promulgate an interpretive regulation that includes such children within the definition of "recipient." The Secretary was faced with a task with which the courts are quite familiar, namely, the resolution of "the question, which choice is it the more likely that Congress would have made?" *Burnet v. Guggenheim,* 288 U.S. 280, 285, 53 S.Ct. 369, 370, 77 L.Ed. 748 (1933). The Secretary's resolution of that question was reasonable, and ordinarily that alone would be sufficient to uphold it. *See Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969) ("the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . ." (footnote omitted)). *See also Youakim v. Miller,* 425 U.S. 231, 235, 96 S.Ct. 1399, 47 L.Ed.2d 701 (1976); *New York Dep't of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Lewis v. Martin,* 397 U.S. 552, 559, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). In view of the district court's decision, however, it is appropriate to consider other matters which bolster the Secretary's determination and suggest that Congress fully intended to require dependent children to acquire and submit SSN's as a condition of eligibility for assistance. *See United States v. Boisdoré's Heirs,* 49 U.S. [8 How.] 113, 121, 12 L.Ed. 1009 (1849), *quoted in Philbrook v.*

*Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.").

The statute itself declares that the purpose of the AFDC program is to encourage the care of dependent children in their own homes or in the homes of relatives by enabling states "to furnish financial assistance and rehabilitation and other services . . . *to needy dependent children* and the parents or relatives with whom they are living . . . ." 42 U.S.C. § 601 (emphasis added). In addition, § 602 contains a number of provisions indicating that Congress intended to include dependent children within the statutory term "recipient." Thus, § 602(a)(7) provides that

> the State agency shall, in determining need, take into consideration any other income and resources of *any child or relative claiming aid* to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of *the child or relative claiming such aid,* as well as any expenses reasonably attributable to the earning of any such income.

(emphasis added). Section 602(a)(8), which provides certain "income disregard" exceptions to § 602(a)(7), refers to "the earned income of each dependent child receiving aid to families with dependent children." Section 602(a)(15)(A) refers to "each appropriate relative and dependent child receiving aid under the plan." Section 602(a)(16) refers to "the home in which a relative and child receiving aid reside." Section 602(a)(19)(F) refers to "aid for any dependent child," "the only child receiving aid," and "one child receiving aid." Again, § 606(f) provides that "[n]othing in this subsection shall be construed to make an otherwise eligible child ineligible for protective payments because of the failure of such parent (or such other individual) to so cooperate." In other words, the presumption

throughout the statute is that the children are individuals "receiving aid"—individuals whose status, resources, income and needs are used to determine the level and type of assistance to which they are entitled. *See also* 42 U.S.C. § 653(c)(3) (enacted at the same time as §§ 602(a)(25) and (26)); 42 U.S.C. § 405(c)(2)(C)(i); S.Rep.No. 93–1356, *reprinted in* [1974] U.S.Code Cong. & Admin.News pp. 8133, 8145–58.

That Congress intended to require all such individuals to furnish SSN's as a condition of eligibility is made clear not only by § 602(a)(25)(A), but also by § 611, which was enacted on December 20, 1977, and which "throw[s] a cross light upon" the earlier enactment. *United States v. Aluminum Co. of America,* 148 F.2d 416, 429 (2d Cir. 1945). That statute provides as follows:

> (a) Notwithstanding any other provision of law, the Secretary shall make available to States and political subdivisions thereof wage information contained in the records of the Social Security Administration which is necessary (as determined by the Secretary in regulations) for purposes of determining an individual's eligibility for aid or services, or the amount of such aid or services, under a State plan for aid and services to needy families with children approved under this part, and which is specifically requested by such State or political subdivision for such purposes.
>
> (b) The Secretary shall establish such safeguards as are necessary (as determined by the Secretary under regulations) to insure that information made available under the provisions of this section is used only for the purposes authorized by this section.

Social Security Amendments of 1977, Pub. L.No. 95–216, § 403(a), 91 Stat. 1509, 1561. This statute makes clear that Congress was aware of, and concerned about, unnecessary proliferation of SSN's but, rather than declining to take advantage of the SSN's, Congress deemed it adequate to instruct the Secretary to take whatever precautions were determined to be necessary for the protection of privacy.

The district court relied upon § 602(a)(26) to support the conclusion that Congress meant to distinguish "applicant" and "recipient" from dependent children. That statute, enacted at the same time as § 602(a)(25), provides as follows:

> as a condition of eligibility for aid, each applicant or recipient will be required—
>
> (A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed,
>
> (B) to cooperate with the State (i) in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed, and (ii) in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed, or in obtaining any other payments or property due such applicant or such child, unless (in either case) such applicant or recipient is found to have good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary, which standards shall take into consideration the best interests of the child on whose behalf aid is claimed; and that, if the relative with whom a child is living is found to be ineligible because of failure to comply with the requirements of subparagraphs (A) and (B) of this paragraph, any aid for which such child is eligible will be provided in the form of protective payments  .   . ..

The district court concluded that "[i]t would be illogical  .   .   to interpret the identical words, when used in § 602(a)(25), in a fashion different from that employed in its sister statute § 602(a)(26)." 427 F.Supp. at 839. Although certain portions of this provision may be directed to applicants and recipients who are caretaker relatives rather than dependent children, this does not

require that dependent children be excluded from definition as "recipients" under § 602(a)(25). It is clear that children may have rights to support from other resources which, under § 602(a)(26), they would be obliged to assign to the state. Moreover, § 602(a)(26)(B)(ii) itself refers specifically to "aid for which such child is eligible." *See also Chambers v. Klein,* 419 F.Supp. 569, 577–78 (D.N.J.1976), *aff'd mem.,* 564 F.2d 89 (3d Cir. 1977) ("That . . . a parent or relative may also receive an AFDC grant does not detract from the person whom the AFDC program was designed to aid, namely, the dependent child."); *Solman v. Shapiro,* 300 F.Supp. 409, 415 (D.Conn.) (3 judge court), *aff'd mem.,* 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969); S.Rep.No. 93–1356, *reprinted in* [1974] U.S.Code Cong. & Admin.News pp. 8133, 8145–58.

Finally, we consider 42 U.S.C. § 405(c)(2)(B)(i)(II), which deals with the duties of the Secretary in connection with the Federal Old Age, Survivors, and Disability Insurance Benefits program, 42 U.S.C. § 401 *et seq.* That section provides as follows:

> In carrying out his duties under subparagraph (A), the Secretary shall take affirmative measures to assure that social security account numbers will, to the maximum extent practicable, be assigned to all members of appropriate groups or categories of individuals by assigning such numbers (or ascertaining that such numbers have already been assigned):
>
> .    .    .    .    .
>
> (II) to any individual who is an applicant for or recipient of benefits under any program financed in whole or in part from Federal funds including any child on whose behalf such benefits are claimed by another person.

Although the district court believed this statutory provision was evidence of a con-

gressional intent to distinguish between an "applicant for or recipient of" aid and a "child on whose behalf such benefits are claimed," we think it shows quite the opposite. Congress no doubt saw the possibility of ambiguity, and chose expressly to include children so as to remove any doubts. It is unfortunate that Congress did not choose the same path when it enacted § 602(a)(25), but that lapse is not in itself sufficient to create an ambiguity not otherwise present in the statutory scheme.

Congress has determined that SSN's are useful to the efficient and economical administration of federal assistance programs.[3] There is much in the language and background of the statute that suggests that the Secretary's definition of the term "recipient" accurately reflects Congress' purpose. We certainly have found no "compelling indications that it is wrong." *Red Lion Broadcasting Co. v. FCC, supra,* 395 U.S. at 381, 89 S.Ct. at 1802. Accordingly, the regulation is not "inconsistent" with the statute, and it is therefore valid under 42 U.S.C. § 1302.

■ The Greens and Walker have maintained that the regulations challenged in this action also violate § 7 of the Privacy Act of 1974, Pub.L. No. 93–579, 88 Stat. 1896, 1909 (codified at 5 U.S.C. § 552a note), which provides as follows:

> (a)(1) It shall be unlawful for any Federal, State, or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.
>
> (2) the provisions of paragraph (1) of this subsection shall not apply with respect to—
>
> (A) any disclosure which is required by Federal statute, or

---

**3.** There can be little doubt that Congress expected the income or resources of dependent children to be considered in the determination of eligibility or the amount of assistance. *See, e. g.,* 42 U.S.C. §§ 602(a)(7), (8), (19) and (26), 606. Nor can there be any doubt that the regulation here in question will serve Congress' goal of "simplify[ing] the administration of the AFDC and Child Support programs." S.Rep.No. 93–1356, *reprinted in* [1974] U.S. Code Cong. & Admin.News pp. 8133, 8152. SSN's are a convenient device with which to organize records, identify resources available to dependent children, and determine whether such children have been earning income or maintaining savings accounts.

(B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.

Their position in this regard has always been somewhat awkward. If § 602(a)(25) requires that dependent children obtain and furnish SSN's, then the Privacy Act does not apply because of the exception; if, on the other hand, § 602(a)(25) does not require children to submit SSN's, the Privacy Act is not needed for resolution of this dispute. In view of our reading of § 602(a)(25), we find that the exception applies, and we hold that, in this regard, there is no violation of the Privacy Act.

█ The Greens and Walker have filed a cross-appeal in which they challenge as an abuse of discretion the district court's denial of their motion for class certification, made one month after the court's decision on the merits.[4] Although the case was instituted as a class action, neither party moved for a grant or denial of class status under Fed.R.Civ.P. 23 prior to the district court's decision on the merits, nor did the Greens and Walker move for class certification within 90 days of filing the complaint as required by Vermont District Court Local Rule of Civil Procedure No. 11(3). "The determination of whether an action can be maintained as a class action . . . is one which is peculiarly within the discretion of the trial judge." *Becker v. Schenley Industries, Inc.,* 557 F.2d 346, 348 (2d Cir. 1977). *See also Yulio v. Moore-McCormack Lines, Inc.,* 387 F.Supp. 872, 877 (S.D.N.Y. 1975); *Glodgett v. Betit,* 368 F.Supp. 211, 213–14 (D.Vt.1973) (3 judge court), *aff'd sub nom. Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975). We do not believe that the district court's decision was an abuse of discretion.

The decision of the district court is reversed and the case is remanded for further proceedings.

---

4. Unlike so many appeals in which the question of class certification is raised, the judgment in this case is a final one and the question of appealability is not before us. *See generally Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656 (2d Cir. 1978).