Lucille BUHS, petitioner, Respondent,

v.

STATE of Minnesota, DEPARTMENT OF PUBLIC WELFARE, Appellant,

Benton County Welfare Agency, Respondent.

No. 51557.

Supreme Court of Minnesota.

June 5, 1981.

Warren Spannaus, Atty. Gen., and Beverly Jones Heydinger, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Paul C. Clabo, Legal Aid Society of Minneapolis, Inc., Minneapolis, for Buhs.

Richard T. Jessen, County Atty., Foley, for Benton County Welfare Board.

YETKA, Justice.

The Benton County Welfare Agency refused to make Medicaid benefits available to respondent Lucille Buhs for X-rays taken by her chiropractor. Respondent appealed to the Minnesota Department of Public Welfare (DPW), and the appeals referee recommended that benefits be denied. The commissioner accepted this recommendation and respondent petitioned for review in Benton County District Court. On a motion for summary judgment, the district court reversed the agency's decision and ordered that benefits be made available. DPW now appeals the trial court's order to this court. We affirm.

Lucille Buhs was an eligible recipient of medical assistance who underwent chiropractic treatment for back problems. Her chiropractor, Dr. Joseph M. McKierman, took X-rays of respondent before administering treatment. Although the county welfare agency paid for the part of the treatment that involved spinal manipula-

tion, the agency refused to pay for the X-rays.

At the hearing on respondent's appeal to DPW, Dr. McKierman testified that X-rays were medically necessary to determine the nature and extent of respondent's back problem. He further testified that without X-rays, administering treatment could result in harm to the patient, such as broken bones or aggravation of the back disorder. Dr. McKierman's testimony was not controverted.

The appeals referee found that DPW Rule 47 specifically prohibited medical assistance payments for chiropractic X-rays, and the county welfare agency's decision not to pay for the X-rays was affirmed.

Reviewing the agency's denial of benefits, the district court found that federal statutes and regulations did not prohibit payment for chiropractic X-rays and that DPW's exclusion of chiropractic X-rays from Minnesota's medical assistance program was contrary to the federal Social Security Act.

Two issues are raised in this appeal:

1. Did Congress intend that Medicaid prohibit payment for chiropractic X-rays?

2. Is DPW Rule 47's prohibition of medical assistance payments for chiropractic X-rays valid under state and federal law?

1. Title XIX of the Social Security Act (Medicaid) is a program in which the federal government reimburses the states for a portion of the cost of providing medical assistance to the needy. If a state chooses to participate in the Medicaid program, as Minnesota has, it must adhere to federal requirements. Congress has given the states sole authority to decide whether chiropractic services should be covered by the state program.

DPW argues, however, that chiropractic X-rays are excluded from coverage under Medicaid. This argument is based on the following language from the Medicaid statute.

If the State plan includes provision of chiropractors' services, such services include only—

(1) services provided by a chiropractor (A) who is licensed as such by the State and (B) who meets uniform minimum standards promulgated by the Secretary under section 1395x(r)(5) of this title; and

(2) services which consist of treatment by means of manual manipulation of the spine which the chiropractor is legally authorized to perform by the State.

42 U.S.C. § 1396d(g) (1976). According to DPW, this section prohibits Medicaid from paying for chiropractic X-rays because it limits payment for chiropractic services exclusively to manual manipulation of the spine.

In 1974, the Department of Health, Education, and Welfare (HEW)[1] promulgated a regulation using language nearly identical to the statute. When that regulation was adopted, HEW issued the following commentary:

> Most of the comments [on the proposed rule] concerned the restriction of payment for services to treatment by manual manipulation, which precludes payment for diagnostic x-rays taken by chiropractors or for other types of services or treatment provided by them. . . . The restriction has been retained in the final regulation, reflecting the Department's policy on this subject as promulgated under the Medicare program.

39 Fed.Reg. 37,637 (1974) (last sentence referring to similar Medicare regulation). Although the HEW commentary is not a rule possessing the force and effect of law, it does indicate the agency's interpretation on the subject of chiropractic X-rays.

DPW argues that this court must defer to the agency's interpretation of the regulation. According to the United States Supreme Court, deference must be given to an administrative agency's interpretation of a statute: "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administra-

tive construction." *Red Lion Broadcasting Co. v. Federal Communications Commission*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969) (following administrative regulation) (footnotes omitted); *accord, New York State Department of Social Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973) (interpreting HEW policy of approving state welfare work program). The HEW commentary in this case falls within the agency-deference principle articulated in *Red Lion*. Although *Red Lion* referred to an agency's construction of a statute, the language in the HEW commentary refers to a regulation which, in turn, interprets the Medicaid statute. Even though the HEW commentary is not a rule having the force and effect of law or the product of a contested-case decision, the United States Supreme Court has applied this principle to agency guidelines and directives. *See, e. g., Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 76 n.11, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977) (deferring to EEOC administrative guideline); *Youakim v. Miller*, 425 U.S. 231, 235, 96 S.Ct. 1399, 1402, 47 L.Ed.2d 701 (1976) (per curiam) (deferring to HEW administrative directive). Finally, Congress has acquiesced in the regulation since it was promulgated in 1974, apparently with full knowledge of how it was interpreted by HEW. The result is a strong argument that this commentary by the agency showing a clear intention to exclude chiropractic X-rays must be given deference by this court.

■ Deference to an agency's interpretation of a statute need not be given, however, when "there are compelling indications that it is wrong." *Red Lion*, 395 U.S. at 381, 89 S.Ct. at 1801. Respondent argues that HEW's interpretation in this case is clearly wrong and, as a result, should not be followed. We agree.

■ First, although the statute limits chiropractic services to manual manipulation of the spine, it makes no specific reference to X-rays. The absence of any specific

---

1. The agency is now called the Department of Health and Human Services.

prohibitory language, when viewed in conjunction with other portions of the Medicaid statute, suggests that payment for chiropractic X-rays is not necessarily prohibited.

Other statutes and regulations allow chiropractic X-rays to be included within a state's medical assistance program. Certain services must be provided by a state participating in Medicaid. *See* 42 U.S.C. § 1396a(a)(13)(B) (1976), *as amended by* Omnibus Reconciliation Act of 1980, Pub.L. No. 96–499, tit. IX, § 965(b), 94 Stat. 2599, 2652. Those services are:

(1) inpatient hospital services (other than services in an institution for tuberculosis or mental diseases);

(2)(A) outpatient hospital services, and (B) consistent with State law permitting such services, rural health clinic services (as defined in subsection (*I*) of this section) and any other ambulatory services which are offered by a rural health clinic (as defined in subsection (*I*) of this section) and which are otherwise included in the plan:

(3) other laboratory and X-ray services;

(4)(A) skilled nursing facility services (other than services in an institution for tuberculosis or mental diseases) for individuals 21 years of age or older (B) effective July 1, 1969, such early and periodic screening and diagnosis of individuals who are eligible under the plan and are under the age of 21 to ascertain their physical or mental defects, and such health care, treatment, and other measures to correct or ameliorate defects and chronic conditions discovered thereby, as may be provided in regulations of the Secretary; and (C) family planning services and supplies furnished (directly or under arrangements with others) to individuals of child-bearing age (including minors who can be considered to be sexually active) who are eligible under the State plan and who desire such services and supplies;

(5) physicians' services furnished by a physician (as defined in section 1395x(r)(1) of this title), whether furnished in the office, the patient's home, a hospital, or a skilled nursing facility, or elsewhere;

42 U.S.C. § 1396d(a)(1)–(5) (1976 & Supp. III 1979); *see Harris v. McRae*, 448 U.S. 297, 301–02, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980); *Beal v. Doe*, 432 U.S. 438, 440, 97 S.Ct. 2366, 2368, 53 L.Ed.2d 464 (1977). Item three on this list, requiring a state to provide X-ray services, does not contain any language suggesting that it includes only physicians' X-rays or that it excludes chiropractic X-rays. Rather, this section requires states to provide for all medically necessary X-rays, whether needed for medical treatment or chiropractic treatment.

X-ray services are defined by regulation:

"Other laboratory and X-ray services" means professional and technical laboratory and radiological services—

(a) Ordered and provided by or under the direction of a physician or other licensed practitioner of the healing arts within the scope of his practice as defined by State law;

(b) Provided in an office or similar facility other than a hospital outpatient department or clinic; and

(c) Provided by a laboratory that meets the requirements for participation in medicare.

42 C.F.R. § 440.30 (1980). Because a chiropractor is a "licensed practitioner of the healing arts," chiropractic X-rays are specifically included as a service that states must provide under Medicaid.

Second, neither the statute nor the regulation limiting chiropractors' services to manual manipulation of the spine was intended to cover X-rays. Item five on the list of services made mandatory under Medicaid is "physicians' services," something that is apparently separate and distinct from "X-ray services" specified in item three. Because "X-ray services" are not included within the term "physicians' services," it is to be implied that they are not included within the statutory term "chiropractors' services" as well. As a result, X-ray services must be provided under Medicaid without regard to the statute and

regulation limiting chiropractors' services to manual manipulation of the spine. *Compare* 42 C.F.R. § 440.30 (1980) (defining X-ray services) *with id.* § 440.50 (defining physicians' services) *and id.* § 440.60(b) (defining chiropractors' services).

Third, if Medicaid was intended to exclude chiropractic X-rays, the regulations would have provided specific language excluding this service. Medicare, unlike Medicaid, has a regulation that refers specifically to chiropractic X-rays and states that federal reimbursement will not be made for such X-rays. *See* 42 C.F.R. § 405.232b(c) (1980). If Medicaid was also intended to prohibit payment for chiropractic X-rays, the regulations would have employed specific language like that used in the Medicare regulations.

Finally, when chiropractic X-rays are medically necessary, other provisions of Medicaid require that they be covered under the state's plan. Medicaid expressly reimburses for chiropractic services involving manual manipulation of the spine. Other portions of the Medicaid statute require that care provided under a state's plan be of high quality and be provided in a manner consistent with the best interests of the recipient. *See* 42 U.S.C. § 1396a(a)(19), (22) (1976). A regulation requires that each service provided under a state plan be sufficient in amount, duration, and scope reasonably to achieve its purpose. *See* 42 C.F.R. § 440.230(b) (1980). To deny coverage for chiropractic X-rays would violate these requirements. The result would be chiropractic care limited in a manner that is inconsistent with the best interests of the recipient. Patients would be encouraged to visit practitioners who do not use X-rays and thereby risk further injury from a substandard quality of care.

Medicaid requires states to provide X-ray services, and all services provided under Medicaid must be of high quality. None of the language used by Congress in the Medicaid statute reflects an intention to exclude chiropractic X-rays. As a result, we conclude that the HEW commentary stating that chiropractic X-rays should not be pro-

vided under Medicaid is clearly the wrong way to interpret the Medicaid statute. We find that Congress did intend to make this service available to those who need it.

█ 2. DPW also argues that medical assistance payments for chiropractic X-rays are prohibited by Rule 47. That rule provides that the medical assistance program "shall not cover x-rays nor any other diagnostic or laboratory procedure provided by a chiropractor." 12 M.C.A.R. § 2.047.E.2.-e(1)(d).

We have already stated that the HEW commentary, adopted in DPW Rule 47, is clearly erroneous. Had Congress intended to exclude diagnostic procedures necessary for effective chiropractic services, it would have done so. Instead, Congress has required that the care provided by a state program be of high quality and consistent with the best interests of the recipients. *See* 42 U.S.C. § 1396a(a)(19), (22) (1976); *cf.* 42 C.F.R. § 440.230(b) (1980) (each service under state plan must be sufficient in amount, duration, and scope reasonably to achieve its purpose). Rule 47's prohibition against payment for chiropractic X-rays is inconsistent with these requirements. The rule is therefore invalid.

Even if Congress did intend to exclude chiropractic X-rays under Medicaid, Rule 47's prohibition is invalid because it is inconsistent with public policy, arbitrary, and unreasonable under Minnesota law. According to Minnesota's medical assistance statute:

"Medical assistance" or "medical care" means payment of part or all of the cost of the following care and services for eligible individuals whose income and resources are insufficient to meet all of such cost:

. . . .

(9) Laboratory and x-ray services.

. . . .

(16) Any other medical or remedial care licensed and recognized under state law.

Minn.Stat. § 256B.02(8) (1980). Instead of excluding chiropractic X-rays, this statute shows an intention that they be covered.

To hold otherwise in this case would be to require Medicaid recipients to pay for the diagnosis necessary to proper and effective treatment, even though the very reason someone is a Medicaid recipient is that he cannot afford to pay for these services. To hold otherwise would also encourage people to seek treatment without proper diagnosis and thereby risk unnecessary additional injury. The conscientious chiropractor, one who would not perform services unless the disorder was properly diagnosed, would have to exclude some segments of the population from his practice. This would penalize the conscientious practitioner, yet give an incentive for the unscrupulous practice to flourish. All of these results clearly violate the policy that "[t]he legislature does not intend a result that is absurd ... or unreasonable." Minn.Stat. § 645.17(1) (1980).

While our legislature has granted DPW the authority to implement Medicaid by promulgating rules of eligibility, we cannot find that it intended the result proposed by the DPW. If funds are not available, it would be far better for the state to bar payment for all chiropractic services or to use the funds until exhausted for reimbursement for all services found medically necessary by a reputable chiropractor than to encourage treatment without proper diagnosis that might not only be unwarranted, but dangerous to the health of the patient.

The trial court is affirmed.