Alexander **YULIO** and John P. Oleksey, Individually and on behalf of the duly assigned marine engineers to the STEAMSHIPS **BRASIL AND ARGENTINA** at the time of their last voyages, Plaintiffs,

v.

**MOORE–McCORMACK LINES, INC.,** et al., Defendants.

No. 74 Civ. 969 (MP).

United States District Court, S. D. New York.

Jan. 20, 1975.

Feinson & Goodman, New York City, by Herbert G. Feinson, New York City and Robert I. Goodman, for plaintiffs.

Proskauer, Rose, Goetz & Mendelsohn, New York City, by Edward Silver, Howard Ganz, and Robert Jossen, New York City, for defendants Moore-McCormack Lines, Inc. and Holland-American Lines, Inc.

Markowitz & Glanstein, New York City, by Richard H. Markowitz, New York City, for defendants Marine Engineers Beneficial Association and MEBA, District No. 1.

## DECISION AND OPINION

POLLACK, District Judge.

This is a case of Admiralty and Maritime jurisdiction which has been tried to the Court without a jury. Plaintiffs, duly licensed marine engineers, claim that they are entitled to receive severance pay based upon the transfer of the S.S. BRASIL and the S.S. ARGENTINA to foreign registry by defendant Moore-McCormack Lines, Inc. The transfer was made to Holland-American Lines, Inc., named as a co-defendant. The plaintiffs are members of Marine Engineers Beneficial Association, and MEBA, District No. 1 (hereinafter referred to as MEBA, collectively) which are also named as defendants.

The collective bargaining agreement between MEBA and defendant Moore-McCormack Lines, Inc. in effect at the time of the transfer of the two vessels to foreign registry provided that severance pay in the amount agreed therefor would be paid to the Special Fund of the MEBA Pension Plan, rather than to the individual engineers who lost their jobs as a result of the transfers. The amounts of severance calculated and due under the agreed formula were paid by defendant Moore-McCormack Lines, Inc. to the MEBA Pension Trust to be placed in the Special Fund of the Pension Plan on the respective dates of transfer of the two vessels in August 1972.

Shortly thereafter, counsel for plaintiffs raised a claim with the Union that the individual plaintiffs rather than the Special Fund were entitled to the severance pay. The Union submitted the claim of these individuals to the grievance process established by the collective bargaining agreement, and after a hearing thereon, in which counsel for plaintiffs participated, an Opinion and Award of the Impartial Arbitrator found that the provisions of the applicable 1972 collective bargaining agreement provided that severance pay was to be paid to the Special Fund of the Pension Plan upon the transfer of a vessel to foreign registry; that the individual marine engineers, including plaintiffs herein, were not entitled to receive severance pay; and that these provisions were controlling and effective as of the date of the transfer of the vessels in question to foreign registry. He thus held that defendant Moore-McCormack Lines, Inc. had properly paid the severance pay to the Special Fund of the MEBA Pension Plan.

Some sixteen months after the determination of the Impartial Arbitrator, the plaintiffs instituted this action, allegedly on their own behalf and on behalf of the marine engineers duly assigned to the steamships BRASIL and ARGENTINA at the time of the ships' last voyages.

At the close of plaintiffs' case, their counsel consented to the dismissal of the complaint against Holland-American Lines, Inc., with prejudice, and the complaint against it was thereupon dismissed, without costs. Decision as to the other defendants was reserved at the close of the entire case, and the parties were given leave to submit such post-trial briefs as they might deem necessary in the light of the submissions made theretofore. The case has now been finally submitted.

For the reasons shown hereafter, the complaint must be dismissed on the merits and judgment entered in favor of defendants.

The parties herein stipulated to a Statement of Facts, which was marked

Plaintiffs' Exhibit 1, in evidence, with the exception by plaintiffs of general objections thereto on grounds of materiality and relevancy and specific objection to the matter contained in paragraphs 23 and 24, the content of which the Court now finds as fact, and with the further exception by plaintiffs that paragraph 9 should be amended to recite additionally that the collective bargaining agreement of 1969 referred to therein was arrived at after July 29, 1969 and made retroactive to June 16, 1969. The suggested inclusion of that information in paragraph 9 is not material to the determination of the issue before the Court and paragraph 9 is therefore made a finding of the Court in the form in which it has been stated in Plaintiffs' Exhibit 1. The objections on the ground of relevancy and materiality to matter contained in Plaintiffs' Exhibit 1 are overruled.

Accordingly, Plaintiffs' Exhibit 1 is hereby incorporated by reference as part of the Court's findings of fact thereby avoiding its needless repetition herein.

The plaintiffs challenge the validity of the arbitration mentioned above which was held in respect to their claims. The collective bargaining agreement provides that all disputes relating to the interpretation or performance thereof should be determined in accordance with the provisions in Section 2 entitled "Grievance Procedure and Arbitration". The evidence conclusively establishes that the arbitration procedure was duly observed.

A Union representative who appeared as a witness on the trial herein testified, and the Court finds, that in accordance with the provisions of the collective bargaining agreement dated June 16, 1972 and applicable herein, a "Licensed Personnel Board" had been duly appointed and met on September 13, 1972; that it consisted of two persons representing and appointed by the Union, two persons representing and appointed by the shipowner and the Impartial Arbitrator, David Cole, Esq., who had been duly selected theretofore and who acted as chairman at the meeting. Notice of an arbitration hearing on the controversy set forth by the plaintiffs through their counsel had been duly furnished to the interested parties, including plaintiffs' then attorney. On that occasion the Union and Company representatives agreed to leave determination of the dispute to the chairman of the meeting, the Impartial Arbitrator, and the latter thereupon took the appropriate evidence, received briefs from the plaintiffs' attorney, and ultimately rendered the decision which is found in paragraph 33 of Plaintiffs' Exhibit 1.

As shown in Plaintiffs' Exhibit 1, paragraph 26, the collective bargaining agreement provides:

> The Arbitrator designated will serve as the chairman of any meeting of the Licensed Personnel Board. If said Board resolves any grievance either by majority vote or by mutual agreement, said grievance shall be deemed settled.

> In the absence of such final disposition by the Licensed Personnel Board, the Arbitrator will then have jurisdiction of the case to render a decision as Arbitrator.

The procedure adopted on September 13, 1972 fully conformed to the collective bargaining agreement.

It is clear that the exact claim which plaintiffs now make in this action was presented to and determined by the Impartial Arbitrator in accordance with the collective bargaining agreement between the defendant Company and the defendant Union. Plaintiffs were members of the defendant Union and were employed under the terms and provisions of its collective bargaining agreement with the defendant Moore-McCormack Lines, Inc. They are bound by its terms and by the resolution of disputes under its terms.

■■ There are no facts from which the Court can reasonably infer that the Union acted arbitrarily, capriciously, maliciously, or in a discriminatory manner and no cause of complaint predicated on alleged breach of the duty of fair representation against MEBA has been made out. The determination of the dis-

pute by Arbitrator Cole is in all respects valid and binding on the plaintiffs. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Suissa v. American Export Lines, Inc., 367 F.Supp. 1113 (S.D.N.Y. 1973) (Ward, J.), aff'd, 507 F.2d 1343 (2d Cir. 1974). Cf. Hana Heating & A. C. Co., Inc. v. Sheet Metal Workers International Association, Local Union No. 38, 378 F.Supp. 1001 (S.D.N. Y.1974) (Brieant, J.).

It makes no difference herein whether plaintiffs could have originally presented their claims to a federal judicial forum. Cf. U. S. Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351, 91 S.Ct. 409, 27 L. Ed.2d 456 (1971).

Plaintiffs plainly evinced interest in and became part of the grievance procedure. After announcing to the Company and the Union through counsel their viewpoint that all monies due up until June 15, 1972 under Section 43 were vested wages, they urged that the money allegedly so due not be transferred to a common fund as provided in the collective bargaining agreement of June 15, 1972. The plaintiffs were then informed that the Union had determined to submit the question that they had raised to arbitration under said collective bargaining agreement at a hearing scheduled to be held on September 13, 1972 at a time and place stated. The Union suggested that plaintiffs and their attorneys be present, and they accepted the invitation. Their counsel appeared at and participated in the proceedings before the Impartial Arbitrator, making an oral presentation of their points and filing a written memorandum on the facts and law consisting of 23 pages. They also filed a supplementary post hearing memorandum which was received just after the Impartial Arbitrator had rendered his decision. The Impartial Arbitrator considered the memorandum as being in the nature of a reargument, and plaintiffs' counsel was advised by letter that the Arbitrator nonetheless adhered to his original interpretation.

Counsel testified at the trial that he had questioned the Impartial Arbitrator's jurisdiction at the time of the hearing, but this objection lacks merit in the light of the explicit provisions of Section 2 of the collective bargaining agreement (Exh. 2 of Trial Exh. 1A). Plaintiffs may not now relitigate the matter. Suissa v. American Export Lines, Inc., 367 F.Supp. 1113 (S.D.N.Y. 1973), aff'd, 507 F.2d 1343 (2d Cir. 1974).

Apart from the unsupported contention that the arbitration panel was invalidly convened and not in accordance with the collective bargaining agreement the plaintiffs contended that the severance arrangements which had existed from the time of the 1961 collective bargaining agreement whereby severance payments were to be made to the individual seamen, could only be modified as to the future and not as to the past. Pursuing this line of argument the plaintiffs contended that the seamen had shipped under Shipping Articles prior to June 16, 1972 and that the severance arrangements which were extant in the 1969 and earlier collective bargaining agreements calling for payment to the individual seaman and not to the Pension Fund, could not be varied by an amendment of the collective bargaining agreement on June 16, 1972. This contention falls to the ground by reason of the terms of the June 1972 collective bargaining agreement applicable to the August 1972 transfer of the vessels to foreign registry which provided for the payment of severance obligations to the Pension Fund as indicated heretofore. There was a sound and fair basis for this change as has been fully set out by the Impartial Arbitrator in his Award. Accordingly, that issue is foreclosed by the determination made by the Arbitrator. The collective bargaining agreement in Section 53 (p. 117 thereof) provides that the effective date of the agreement is June 16, 1972 and furthermore that

(b) The parties agree that the provisions of this Agreement shall be, and

be deemed to be incorporated in and part of the Shipping Articles covering voyages of the vessels covered and further agree that appropriate notation thereof be made on the Shipping Articles.

■ The foregoing agreement disposes of any notion that pre-existing Shipping Articles remain unamended by the new collective bargaining agreement. As has already been mentioned, plaintiffs through counsel conceded on the trial that the collective bargaining agreement of June 16, 1972 was known to plaintiffs and was validly made and was applicable from and after June 16, 1972. It thus applies to the August 1972 transfers of the vessels.

Thus, it is entirely clear that even if the plaintiffs' claims had not been barred by the Cole Arbitration Award, their claims for severance payments must nonetheless be denied under the terms of the applicable collective bargaining agreement, that of June 16, 1972. *See* R. G. Wilson v. American President Lines, Ltd., No. 72–1263 (9th Cir. Jan. 17, 1974), aff'g Admiralty No. 29303 (N.D.Cal. Nov. 8, 1971).

■■ There remains one additional matter to which attention was called by the defendants. The complaint herein was attempted to be cast in the form of a class suit. In that respect, the complaint does not carry the designation required by Rule 11A of the Civil Rules of this Court. Moreover, at no time was an application presented to the Court by any party for a determination under Fed.R.Civ.P. 23(c)(1) as to whether the action is to be maintained as a class action. Absent such an application the class action allegations must be disregarded. The plaintiffs reliance on Section 604 of Title 46 which permits joinder as co-claimants of all seamen having cause of complaint of the like kind against the same vessel does not avail as a substitute for class action status. Permissive joinder is not to be equated

with class action status. *See* Totolos v. Compania de Navegacion Cristobal, 94 F.Supp. 699 (S.D.N.Y.1950); Ampatis v. Compania Maritima Samsoc Ltda., S. A., 103 F.Supp. 733 (S.D.N.Y.1951).

Accordingly, the complaint is dismissed as against all defendants, on the merits.

The foregoing together with the findings set forth in Plaintiffs' Exhibit 1,* incorporated herein by reference, shall constitute the findings and conclusions required by Rule 52(a) Fed.R.Civ.P.

So ordered.

## APPENDIX

### EXHIBIT I
### STATEMENT OF FACTS

1. Plaintiffs Alexander Yulio and John P. Oleksey are, and have been since at least 1959, duly licensed marine engineers and members in good standing of District No. 1—Pacific Coast District, MEBA. Yulio and Oleksey were the regularly assigned marine engineers of the SS Brasil at the time of its last regular voyage, prior to its transfer to foreign registry.

2. Defendant Moore-McCormack Lines, Inc. is a duly organized corporation which was the owner of the SS Brasil from 1959 until on or about August 4, 1972. During this period, the SS Brasil was registered under United States Registry. The last regular voyage of the SS Brasil (prior to its transfer to foreign registry) was commenced on or about July 29, 1969, and was completed on or about September 5, 1969. On or about September 5, 1969, the SS Brasil was laid up.

3. Defendants National Marine Engineers Beneficial Association and District No. 1—Pacific Coast District, MEBA (hereinafter referred to collectively as MEBA) are labor organizations within the meaning of the National Labor Relations Act, as amended, 29 U.S.C. § 151

---

* A copy of Plaintiffs' Exhibit 1 is hereto appended.

et seq. At all times relevant to this action, MEBA has been the sole and exclusive collective bargaining representative of, *inter alia*, all licensed marine engineers (including plaintiffs) employed on U.S. Flag ocean going dry cargo vessels (including the SS Brasil and SS Argentina) owned or operated by Moore-McCormack.

4. Defendant Holland-American Lines, Inc. is a duly organized foreign corporation which purchased the SS Brasil and SS Argentina from Moore-McCormack and transferred those vessels to foreign registry. Holland-American has never been the employer of plaintiffs; nor has it ever been a party to any agreement with plaintiffs or with a collective bargaining representative of plaintiffs respecting severance or any other payments.

5. Over a period of years, defendants MEBA and Moore-McCormack have engaged in collective bargaining negotiations with respect to the terms and conditions of employment of licensed marine engineers employed on U.S. Flag ocean going dry cargo vessels owned or operated by Moore-McCormack.

6. During collective bargaining negotiations in 1958, MEBA and Moore-McCormack agreed that, if no agreement thereon could be reached by negotiation, they would submit to arbitration the following issue:

The issue of incorporating into the agreement a clause embodying the general principle that some severance allowance should be made in the case of an engineer who has permanently lost his position by reason of the transfer or sale of his vessel to foreign registry. If this issue is submitted to arbitration, the arbitrator shall consider first whether a severance pay program is suitable and practical for the industry and if in the affirmative then he shall determine the basic provisions for a suitable and practical severance pay plan which shall have as one factor the length of continuous service of the employee affected.

7. The foregoing issue was submitted to arbitration before Arbitrator Mitchell Shipman. On or about July 9, 1959, Arbitrator Shipman issued an award, which became part of the collective bargaining agreement. A copy of the Shipman Award is appended hereto and marked Exhibit 1.

8. Section 43 of the collective bargaining agreement between MEBA and Moore-McCormack Lines, Inc., effective June 16, 1965, provided as follows:

Section 43. Severance Program.

1. The parties agree that the terms and provisions of the Shipman Arbitration Award dated July 9, 1959, establishing the severance program, shall be deemed to be incorporated as part of the Agreement.

2. The Company agrees that it must first make the necessary arrangements with the Association for the escrow of such monies as may be due under the Shipman Award in any case which falls within said Award before it can make any transfer of a vessel out of American registry.

3. Any monies which may be due under the Shipman Award shall be deemed to be wages and all legal actions available to collect wages shall be available to recover any such monies due.

4. The Company agrees that if it desires to sell or bareboat charter or in any manner whatsoever transfer a vessel to another Company, whether American or foreign flag or registry, and at such time the Company has no other vessel under this Agreement, written notice to the Association must first be given to any such sale, charter or transfer or execution of a contract for the same.

5. The Company and the Union agree to undertake a study of the subject of automation and its impact upon the engineers. In the event the Union contends that automation has resulted in the loss of jobs to the engineers, the matter of compensatory

measures may be processed as a grievance under Section 2.

6. In the event the Company, in conjunction with one or more of the other companies, transfers any or all of its passenger vessels, for U.S. flag operation, to any other Company or entity which is not then under agreement with the Union, it is agreed that this Agreement with all of its terms and conditions shall continue to cover said vessels during the life of this Agreement. A failure in any respect in the full performance of this provision shall give the Union the right to forthwith cancel this entire Agreement.

9. Section 43 of the collective bargaining agreement between MEBA and Moore-McCormack Lines, Inc., effective June 16, 1969, provided as follows:

Section 43. Severance Program

(a) The parties agree that the terms and provisions of the Shipman Arbitration Award, dated July 9, 1959, establishing a severance program, shall be deemed to be incorporated as part of the Agreement.

(b) The Company agrees that it must first make the necessary arrangements with the Association for the escrow of such monies as may be due under the Shipman Award in any case which falls within said Award before it can make any transfer of a vessel out of American registry.

(c) Any monies which may be due under the Shipman Award shall be deemed to be wages and all legal actions available to collect wages shall be available to recover any such monies due.

(d) The Company agrees that if it desires to sell or bareboat charter or in any manner whatsoever transfer a vessel to another Company, whether American or foreign flag registry, written notice to the Association must first be given prior to any such sale, charter or transfer or execution of a contract for same.

(e) The Company and the Union agree to undertake a study of the subject of automation and its impact upon the engineers. In the event the Union contends that automation has resulted in the loss of jobs to the engineers, the matter of compensatory measures may be processed as a grievance under Section 2.

(f) In the event the Company, in conjunction with one or more of the other Companies, transfers any or all of its passenger vessels, for U.S. Flag operations to any other Company or entity which is not then under agreement with the Union, it is agreed that this Agreement with all of its terms and conditions shall continue to cover said vessels during the life of this Agreement. A failure in any respect in the full performance of this provision shall give the Union the right to forthwith cancel this entire Agreement.

(g) When severance wages are due they shall be paid by the Company into the vacation plan to be held for the individuals who would be entitled to the same if they thereupon agree to retire from the industry. If any individual entitled to severance wages does not agree to retire from the industry, the severance wages due on his account shall be paid by the vacation plan into the special fund in the pension plan.

10. Defendant Moore-McCormack and defendant MEBA are parties to a collective bargaining agreement* entered into as of June 16, 1972. A copy of said agreement is appended hereto and marked Exhibit 2.

11. Section 43 of the said collective bargaining agreement provides as follows:

(a) The parties agree that the terms and provisions of the Shipman Arbitration Award, dated July 9, 1959, es-

---

* Plaintiffs deny that the agreement referred to is a collective bargaining agreement.

tablishing a severance program, shall be deemed to be incorporated as part of the Agreement.

(b) The Company agrees that it must first make the necessary arrangements with the Association for the escrow of such monies as may be due which falls within said Award before it can make any transfer of a vessel out of American registry.

(c) Any monies which may be due under the Shipman Award shall be deemed to be wages as defined in such Award and shall be subject to legal action to collect wages under existing law.

Any monies due under the Shipman Award shall be paid by the Company into the Special Fund of the Pension Plan, and shall not be paid to individuals under any circumstances.

(d) The Company agrees that if it desires to sell or bareboat charter or in any manner whatsoever transfer a vessel to another Company, whether American or foreign flag registry, written notice to the Association must first be given prior to any such sale, charter or transfer or execution of a contract for same.

(e) The Company and the Union agree to undertake a study of the subject of automation and its impact upon the engineers. In the event the Union contends that automation has resulted in the loss of jobs to the engineers, the matter of compensatory measures may be processed as a grievance under section 2.

(f) In the event the Company, in conjunction with one or more of the other Companies, transfers any or all of its passenger vessels, for U.S. Flag operations to any other Company or entity which is not then under agreement with the Union, it is agreed that this Agreement with all of its terms and conditions shall continue to cover said vessels during the life of this Agreement. A failure in any respect in the full performance of this provision shall give the Union the right to forthwith cancel this entire Agreement.

12. On or about February 12, 1971, Moore-McCormack and Holland-American entered into an agreement with respect to the purchase by Holland-American and the transfer to foreign registry of the SS Brasil and SS Argentina. A copy of said agreement is annexed hereto and marked Exhibit 3. Such purchase and transfer were subject to certain conditions, including the enactment of authorizing legislation by the United States Congress and approval by the United States Department of Commerce (by its Maritime Administration).

13. Legislation authorizing the sale and transfer of the SS Brasil and the SS Argentina was signed by the President on May 2, 1972, and the sale and transfer was approved by the Maritime Administration on July 12, 1972.

14. On August 4, 1972, Moore-McCormack transferred the SS Brasil to Holland-American for foreign registry. On August 21, 1972, Moore-McCormack transferred the SS Argentina to Holland-American for foreign registry.

15. On August 4, 1972 (as to the SS Brasil) and on August 18, 1972 (as to the SS Argentina), Moore-McCormack paid to the special fund of the MEBA Pension Trust the amounts of severance pay ($196,155.67 as to the SS Brasil, and $185,733.16 as to the SS Argentina) required to be paid pursuant to the collective bargaining agreement of June 16, 1972.

16. The MEBA Pension Trust became operative as of January 1, 1956 and paid to eligible employees a pension of $100.00 a month.

17. Effective June 16, 1958, the normal pension for eligible retired employees was increased from $100.00 to $150.00 per month.

18. Effective June 16, 1962, the normal pension after 20 years of service was increased from $7.50 per month per year of service to $10.00 per month per

year of service with a five year guaranty after retirement.

19. Effective November 1, 1963, the normal pension was increased to $300.00 per month.

20. Effective for employees retiring after June 16, 1968, normal pensions after 20 years of service were increased to $325.00 per month, increasing to $425.00 per month after 25 years of service. There was also added a wage related formula which provided a retiring individual with an alternative 37½% of wages after 20 years of service up to 50% of wages after 25 years or more of service.

21. Effective June 16, 1972, a new pension benefit was established for employees with 30 years of credited service amounting to $470.00 per month or 60% of wages, whichever was higher.

22. Effective July 1, 1959, the MEBA Pension Trust introduced a disability pension of $100.00 a month after age fifty (50) with fifteen (15) years of service. The amount of pension increased to $7.50 per month per year of service at age fifty-five (55) with a maximum of twenty (20) years of service. The disability pension was increased again effective June 16, 1961 to $7.50 per month per year of service after fifteen (15) years of service with no age requirement.

23. Effective June 16, 1965, a Special Fund was created by the MEBA Pension Trust to receive particular or special kinds of contributions. Between 1965 and 1969 the Special Fund received contributions for such items as days worked by pensioners who had returned to covered employment, days worked by engineers while receiving vacation benefits, amounts for missing engineers on a voyage or missing night relief engineers. Effective June 16, 1969, the Special Fund received severance payments for engineers who did not agree to retire from the industry and effective June 16, 1972, it received all severance monies.

24. In 1970, the Trustees of the MEBA Pension Trust authorized the use of the Special Fund to pay the costs of a benefit for widows of pensioners.

25. The documents annexed hereto and marked as exhibits 4, 5, 6, 7, 8, and 9 are true copies of letters mailed on or about the dates indicated thereon and received in the regular course by the parties to whom they were addressed.

26. Section 2 of the June 16, 1972 collective bargaining agreement (Exhibit 2) provides in pertinent part as follows:

(a) . . .

All disputes relating to the interpretation or performance of this Agreement shall be determined in accordance with the provisions in this Section.

(b) There shall be a Licensed Personnel Board consisting of two (2) persons appointed by the Union and two (2) persons appointed by the Company.

The Arbitrator designated will serve as the chairman of any meeting of the Licensed Personnel Board. If said Board resolves any grievance either by majority vote or by mutual agreement, said grievance shall be deemed settled.

In the absence of such final disposition by the Licensed Personnel Board, the Arbitrator will then have jurisdiction of the case to render a decision as Arbitrator. Either party may request a further opportunity to present additional evidence for the purpose of the arbitration proceeding. In the absence of any such request or if the Arbitrator shall deny the request, the Arbitrator is to proceed to issue an award without the need of any further hearings.

(c) The decision of a majority of the Board or the Arbitrator, as the case may be, shall be final and binding upon the parties and shall be complied with by both parties immediately upon its issuance.

\* \* \*

(i) It is the desire and the purpose of the parties that all grievances available for Licensed Personnel Board or arbitration be disposed of as promptly and expeditiously as possible.

27. The Impartial Arbitrator, under the collective bargaining agreement between defendant Moore-McCormack Lines, Inc., and defendant MEBA, is David L. Cole, Esquire, who has served as permanent Impartial Arbitrator under the said collective bargaining agreements between these parties for a number of years.

28. On September 13, 1972, there was a proceeding ** conducted before Arbitrator Cole to resolve plaintiffs' claims for severance pay.

29. In attendance at this [arbitration] proceeding were the individuals whose appearances are noted on the "Opinion and Award," a copy of which is appended hereto and marked Exhibit 11. Included in the list of appearances is the following:

"For the Permanent Engineers Committee representing those Engineers who were permanently assigned to Brasil and Argentine when ships were laid-up September 1969

Robert I. Goodman, Esq., Counsel . . ."

30. Mr. Goodman is co-counsel for plaintiffs in this action.

31. At the aforementioned [arbitration] proceeding, Mr. Goodman made oral argument as to why marine engineers (including the plaintiffs herein) should receive severance payments.

32. Following this [arbitration] proceeding, Mr. Goodman filed with Arbitrator Cole a memorandum, a copy of which is annexed hereto and marked Exhibit 10.

33. On or about October 12, 1972, Arbitrator Cole issued an "Opinion and Award," a copy of which is annexed hereto and marked Exhibit 11. In pertinent part, the Opinion and Award issued by Arbitrator Cole states as follows:

"Section 43, the Severance Program set forth in the agreement between National Maritime Engineers' Beneficial Association and Moore-McCormack Lines, Inc. of June 16, 1969 as modified in the 1972 negotiations and made effective as of June 16, 1972, is valid and binding; and the claims of the licensed marine engineers formerly of the SS Brasil and Argentina, which have been duly presented and considered in this arbitration proceeding, are disallowed."

34. A copy of Arbitrator Cole's Opinion and Award was promptly sent to Mr. Goodman and received by him in the normal course.

35. No challenge was made with respect to the [arbitration] proceeding conducted before Arbitrator Cole or to Mr. Cole's authority to act as arbitrator until the commencement of this litigation in or about March 1974. The award issued by Arbitrator Cole has not been vacated or modified; nor has it been confirmed.

---

** Defendants assert—and plaintiffs deny—that this proceeding was an arbitration.