In re The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Debtors.

Sandra F. BORCHERS, Appellant,

v.

The DBL LIQUIDATING TRUST, Appellee.

Nos. 90 Civ. 6954 (MP), 93 Civ. 6427 (MP).
Bankruptcy No. 90 B 10421 (FGC).

United States District Court, S.D. New York.

Dec. 22, 1993.

Daniel A. Eigerman, Marc J. Isaacs, P.C., New York City, for appellant Sandra F. Borchers.

George Wailand, Gregg Kanter, Cahill Gordon & Reindel, New York City, for appellee DBL Liquidating Trust.

## *OPINION*

MILTON POLLACK, Senior District Judge:

Sandra Borchers appeals from an order of the Bankruptcy Court, Francis G. Conrad, *Bankruptcy Judge,* disallowing her claim in bankruptcy against Drexel for the mishandling of her investment account. The claim asserted that Drexel was liable to Appellant as a controlling person for the misconduct of two employees. The claim had been the subject of an arbitration award in which the Appellant was awarded damages against the employee responsible, and the Bankruptcy Court held that Borchers was collaterally estopped from seeking damages from the Debtor based on the vicarious liability of Drexel necessarily involved in the arbitration. The arbitration award was paid. Borchers appeals the collateral estoppel ruling on the ground that the arbitration Award did not fully compensate her for the vicarious responsibility of Drexel in the circumstances.

The disallowance of the claim is affirmed.

## BACKGROUND

Claimant-appellant Sandra Borchers ("Borchers") opened an investment account with Drexel, Burnham, Lambert, Inc. ("Drexel") in Florida in July 1987 using essentially all the assets she obtained in her divorce settlement. Her account executive was Mark Gilbert ("Gilbert"); Gilbert's supervisor was James Strainer ("Strainer"). In May 1989, Smith, Barney, Harris, Upham & Co. ("Smith Barney") took over Drexel's Florida office. Borchers' claim was that Gilbert induced her to purchase unsuitable investments and managed the account for his own benefit. As Borchers' account began to lose money, and as her margin indebtedness increased, she became alarmed. Both Gilbert and Strainer assured her that her investments were suitable and allegedly induced her to maintain the account. Borchers alleged that Strainer had failed to supervise Gilbert properly. Borchers alleged that

Drexel is vicariously liable for the actions of Gilbert and Strainer as a controlling person or under the theory of respondeat superior.

The customer agreement Borchers signed when she opened her trading account with Drexel required that all disputes be submitted to arbitration. In March 1990, Borchers instituted the required arbitration against Drexel on her claims before the National Association of Securities Dealers (NASD), naming as additional parties thereto the two employees responsible for her injuries, Gilbert and his supervisor, one, Strainer, and the firm of Smith Barney to which the Borchers account had been transferred. Borchers alleged churning, misrepresentations, fraud, unsuitable trading, and mismanagement of the account by Gilbert not restrained by Strainer. Borchers' losses were alleged to have resulted from "the trading of [her] account by Respondent Gilbert." Borchers Statement of Claim, *In re Arbitration Between Borchers and Smith, Barney, Harris, Upham & Co., Inc. ("NASD Arbitration")*, Case No. 90–00931 (Mar. 29, 1990) at ¶ 22. She posited causes of action for common law fraud, violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b) ] and Rule 10b–5 promulgated thereunder, violations of Section 12 of the Securities Act of 1933 [15 U.S.C. § 77*l* ], Florida statutory violations, negligence, breach of contract, and breach of fiduciary duty. Her claim sought compensatory damages and additional punitive damages.

In June 1990, Drexel having filed a petition for bankruptcy reorganization under Chapter 11 of the Bankruptcy Code, the NASD notified Borchers that the arbitration would be stayed as to Drexel pursuant to § 362 of the Bankruptcy Code.[1] Borchers did not seek relief from the stay from the Bankruptcy Court and Drexel was thereupon dismissed from the arbitration by the arbitrators. The arbitration was continued as to Drexel's employees and Smith Barney.

In September 1991, during the course of the arbitration proceeding, Smith Barney and Strainer settled with Borchers for a total of $60,000, which was paid. The arbitration was continued against Drexel's account executive Gilbert as the only remaining respondent in the arbitration. The NASD panel conducted twenty-one hearing sessions in the arbitration pursuant to the NASD rules, and Borchers, represented by counsel, presented documentary and testimonial evidence, expert witnesses, and cross-examined adverse witnesses. On October 22, 1991, the NASD's arbitration panel awarded Borchers $40,000 against Gilbert in the following language:

> Gilbert is found liable and shall pay to the Claimant the amount $40,000.00, inclusive of interest. This amount was determined after the Panel took into consideration the fact and amount of Claimant's settlement with respondents SBHU and Strainer.

NASD Award, *NASD Arbitration* (Oct. 22, 1991). The panel further stated that it had "decided in full and final resolution of the issues submitted for determination." The arbitration panel's decision noted that, in light of Smith Barney and Strainer's settlements, "no findings regarding liability or damages were made regarding" Smith Barney or Strainer. Neither party moved to vacate or confirm this Award, and the Award was fully satisfied.

In November 1990, while the arbitration was still pending unresolved, Borchers had filed a protective proof of claim against Drexel in the bankruptcy proceeding. In March 1992 Drexel's plan of reorganization was confirmed, and on April 30, 1992 the Plan became effective. Borchers' claim lay dormant until June 1992. After Drexel's plan or reorganization was confirmed, it turned to the claims that had been filed in the bankruptcy. It issued Questionnaire Five to ascertain a more precise statement of what Borchers was still claiming after completion of the NASD proceeding. In response, Borchers asserted she was seeking $750,000 against Drexel for excessive commissions generated by Gilbert's churning, the losses resulting from the improper investments he recommended, and wrongful margin interest she was put to, and an equal amount in punitive

---

**1.** The DBL Liquidating Trust is the successor in interest to Drexel, Burnham, Lambert, Inc. For the purposes of this opinion, both the DBL liquidating Trust and Drexel, Burnham, Lambert, Inc. will be referred to as "Drexel."

damages—the very matters placed in controversy in the NASD arbitration. Answer of Sandra Borchers to Questionnaire Five, *In re Drexel Burnham Lambert Group,* 90 B 10421 (FGC) (June 1, 1992). Borchers acknowledged in testimony during the arbitration that she was *"seeking recovery in the bankruptcy court in New York for the same losses."* Transcript, *NASD Arbitration* (July 2, 1991) at 220. The NASD arbitration panel found that the liability of Drexel, Strainer, and all other parties being alleged by Borchers was *"through Gilbert."* NASD Award, *NASD Arbitration* at 1. Borchers did not allege below, nor does she do so now, that she sustained any damages other than those caused by Gilbert's alleged wrongdoing. In response to further interrogatories, Borchers stated that the legal bases for her claim were Section 10(b) of the Exchange Act, Section 12 of the Securities Act, and Florida state law. *Borchers Answer to Interrogatory* at 8 (Feb. 19, 1993). Borchers asserted that Drexel was additionally liable to her as a "controlling person" under the federal securities laws, and under the common law theories of respondeat superior and failure to supervise.

Drexel's objection to Borchers' claim was brought before the Bankruptcy Judge in June 1993 on Drexel's motion for summary judgment of disallowance.[2] Drexel argued that all of Borchers' damages were caused by the conduct of its employees and that the NASD Award against Gilbert to pay Borchers $40,000 and the $60,000 settlement by Strainer and Smith Barney taken into account by the arbitrators fully compensated her for all her injuries. Drexel contended that the NASD Award collaterally estopped Borchers from seeking further damages against Drexel; and that further recovery from Drexel would constitute double recovery. The Bankruptcy Judge granted the motion and disallowed Borchers' claim against Drexel, stating that:

It's clear from reading the various exhibits here and the arbitrator's decision and the facts and so on, is that the claimant here . . . is seeking to recover twice for the same injury.

There is no doubt what she's trying recover here comes from the same set of operative facts as what was in the arbitration, it involves the same issue, Gilbert's action.

Now, the issue totally concerns Gilbert and [Strainer's] actions . . .

When you go through piece by piece of everything that happened, there is no doubt that [these] same exact facts, operative facts and the same issues were decided in the arbitration proceeding.

Therefore, the claim here has to be disallowed because collateral estoppel applies.

*In re The Drexel Burnham Lambert Group, Inc.,* Case No. 90 B 10421, (June 23, 1993).

Borchers appeals this resolution of her claim against Drexel by the Bankruptcy Court on the following grounds: (i) the Court erred in giving collateral estoppel effect to an arbitration Award that was not confirmed by a court; (ii) the NASD Award against Gilbert did not fully compensate Borchers for all her damages caused by Gilbert; and (iii) the NASD Award did not fully compensate Borchers for all her damages caused by Strainer.

## ANALYSIS

In deciding a motion for summary judgment on a proof of claim, a Bankruptcy Court is bound by Fed.R.Civ.P. 56. *See* Bankr. Rule 9014 (making Bankr.Rule 7056 (incorporating Fed.R.Civ.P. 56) applicable to contested matters such as objections to proofs of claims). Whether a genuine issue of material fact exists is itself a question of law, subject to *de novo* review. *Bryant v. Mafucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Summary judgment is proper if, viewing the facts in the light most favorable to the non-movant, there is no genuine issue of material

**2.** Pursuant to the Bankruptcy Court's arbitration order of July 7, 1992, Borchers' claim was designated for arbitration. Because no arbitrator had been assigned to hear the claim, Borchers and Drexel stipulated that the Bankruptcy Court could hear the controversy on Drexel's motion for summary judgment of disallowance. *Stipulation, In re The Drexel Burnham Lambert Group, Inc.,* Case No. 90 B 10421, (June 14, 1993).

fact and the moving party is entitled to judgment as a matter of law. *Id.* Borchers claims that the Bankruptcy Court improperly concluded that there were no "genuine issues of material fact" by according preclusive effect to the NASD arbitration. Thus, the core issue is whether the Bankruptcy Court improperly accorded preclusive effect to the NASD arbitration Award.

■ Appellant first argues that the Bankruptcy Court erred as a matter of law in according preclusive effect to the arbitration Award because it had not been confirmed by a court, although it was satisfied by payment. She contends that under federal law in this circuit, a judicially unconfirmed Award carries no collateral estoppel effect.

The preclusive effect of an arbitration Award depends on the basis of the federal court's subject matter jurisdiction. In the instant case, petitioners' claims are founded on alleged violations of federal securities laws, and the parties agree that federal law determines the preclusive effect to be given to the arbitration Award. *See Blonder Tongue Laboratories v. Univ. of Illinois Foundation,* 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971) ("In federal question cases, the law applied is federal law [in determining the preclusive effect of a prior judgment]."); *Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 278 n. 12 (S.D.N.Y.) ("Because the basis for this court's jurisdiction is a federal question, rather than diversity, the federal courts' rule of res judicata governs.")

Under federal law, a *confirmed* arbitration award is deemed to have preclusive effect. *See Benjamin v. Traffic Executive Assoc.* *Eastern RR,* 869 F.2d 107, 110 (2d Cir.1989) ("the findings of arbitration boards can serve as the basis for collateral estoppel in a federal court proceeding") (giving collateral estoppel effect to findings of arbitration panel where award confirmed by district court); *Hybert v. Shearson Lehman/Am. Express Inc.,* 688 F.Supp. 320, 325 (N.D.Ill.1988) ("[o]nce an arbitration decision has been confirmed by a district court, it is entitled to the same preclusive effect as would be given a decision of that court"); *Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 277 (S.D.N.Y.) ("the decision of arbitration panels addressing predicate acts underlying RICO claims ... may be given preclusive effect") (award confirmed by district court).[3] The issue here is whether an arbitration award that has *not* been confirmed by a court can be given preclusive effect. As stated above, Borchers did not seek confirmation of the Award because Gilbert promptly paid the arbitration judgment.

Whether to accord preclusive effect to arbitrators' awards is an issue left to court-developed rules. *See Chang v. Lin,* 824 F.2d 219, 221 (2d Cir.1987). Although Borchers cites several cases where courts have given preclusive effect to *confirmed* arbitration awards, *see e.g., Norris v. Grosvenor Marketing, Ltd.,* 803 F.2d 1281, 1285 n. 4 (2d Cir. 1986) ("collateral estoppel applies to issues adjudicated in arbitration where the arbitration award has been entered as a judgment"), she fails to cite any cases in which a court refused to give preclusive effect to a final but unconfirmed arbitration award.[4]

The fact that an arbitration award has been confirmed by a district court does not

---

3. The Supreme Court has stated that the "it is far from certain that arbitration proceedings will have any preclusive effect on the litigation of *nonarbitrable* federal claims." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 222, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985). However, Borchers' securities claims were clearly amenable to arbitration. *Shearson/American Express v. McMahon,* 482 U.S. 220, 228, 107 S.Ct. 2332, 2338, 96 L.Ed.2d 185 (Exchange Act § 10(b) claims are arbitrable), *reh'g denied,* 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (Securities Act claims are arbitrable).

4. Borchers relies heavily upon *Pampano–Windy City Partners, Ltd. v. Bear Stearns & Co.,* [1992–1993] Fed.Sec.L.Rep. (CCH) ¶ 97,366, 1993 WL 42786 (S.D.N.Y. Feb. 16, 1993) in which the court refused to accord preclusive effect to an arbitration award that had been *confirmed* by the district court, but no final judgment of confirmation had been entered. *Id.* However, in that case the court stated that the confirmation of the award could not serve as the basis for preclusion because the confirmation was subject to appellate review and was not final. *Id.* In the instant case, no judicial confirmation was sought, and the award is no longer subject to further judicial review. Thus, the NASD award is final.

add significant weight to the validity of the award. Confirmation is necessary only when the losing party to the arbitration fails to abide by the judgment. Under the Federal Arbitration Act, 9 U.S.C. §§ 9 and 10, confirmation of an arbitration award is a summary proceeding that makes what is already a final arbitration award a judgment of the court. *Cf. Barbier v. Shearson Lehman Hutton, Inc.,* 948 F.2d 117, 120 (2d Cir.1991) ("judicial review of an arbitration award is narrowly limited. The award may be vacated only if at least one of the grounds listed in 9 U.S.C. § 10 is found to exist.")

In a number of cases decided in the Second Circuit, courts have accorded preclusive effect to unconfirmed binding arbitrations. In *Yulio v. Moore McCormack Lines, Inc.,* 387 F.Supp. 872 (S.D.N.Y.1975), plaintiffs brought an action to enforce their rights under a collective bargaining agreement. However, the court found that the plaintiffs' rights under the collective bargaining agreement had already been decided in an arbitration decision sixteen months prior to their action. The Court held that the issue decided in the arbitration "is foreclosed by the determination made by the arbitrator." 387 F.Supp. at 876. In *Yulio,* the arbitration award had not been confirmed. *Id.* at 882. *See also Hana Heating & Air Conditioning Co. v. Sheet Metal Workers Int'l Ass'n,* 378 F.Supp. 1001 (S.D.N.Y.1974) (where neither party applied to any court to vacate, modify or set aside arbitration award, award became res judicata and plaintiff could not bring action for additional damages); *Maidman v. O'Brien,* 473 F.Supp. 25, 27 (S.D.N.Y.1979) (where defendant sought collateral estoppel based on unconfirmed arbitration award, court analyzed award, concluded that the defendant would have been entitled to have the award confirmed if he had sought confirmation; court then dismissed compliant based on collateral estoppel effect from arbitration award); *Cullen v. Paine Webber Group,* 689 F.Supp. 269, 272, 283–85 (S.D.N.Y.1989) (as an alternative ruling, the court granted defendant securities firm's motion for summary judgment on claims of three plaintiffs on collateral estoppel grounds where plaintiffs' claims were identical to claims that had already been rejected in prior arbitration;

court noted confirmation of only one of the awards). In the instant case, as in *Hana,* Appellant did not object to the award handed down by the arbitration panel. She did not move to vacate or reconsider. Judge Brieant summed up a factually comparable situation in *Hana* thus:

> The principal purpose of arbitration is to 'resolve disputes speedily and to avoid the expense and delay of extended court proceedings.' *Federal Commerce & Navigation Co. v. Kanematsu–Gosho, Ltd.,* 457 F.2d 387, 389 (2d Cir.1972). This purpose would be frustrated if Hana were permitted to apply to this Court for money damages more than 18 months after the Arbitration Panel [handed down its decision]. This action is nothing more than a belated application to this Court to set aside or modify the terms of the Panel's decision which dealt with the same facts raised here.

378 F.Supp. at 1003.

Federal courts in other jurisdictions have also given preclusive effect to unconfirmed arbitration awards. *See, e.g., Wellons v. T.E. Ibberson Co,* 869 F.2d 1166, 1169 (8th Cir. 1989) (affirming grant of summary judgment based on collateral estoppel effect of unconfirmed arbitration award); *City of Bismarck v. Toltz, King, Duvall, Anderson & Assoc., Inc.,* 855 F.2d 580, 582–84 (8th Cir.1988) (affirming grant of summary judgment based on collateral estoppel effect of unconfirmed arbitration award where arbitrators had determined damages caused by joint tortfeasor and such award was satisfied); *Kowalski v. Chicago Tribune Company,* 1990 WL 43273, *5 (N.D.Ill. Apr. 4, 1990) ("[t]here is no doubt that even an unconfirmed arbitration award is generally entitled to be given preclusive effect for res judicata purposes").

Borchers' first argument—that an unconfirmed arbitration award necessarily has no preclusive effect—thus fails. In the instant case, if the other elements of collateral estoppel are met, the doctrine of collateral estoppel could be applied to the arbitration Award, notwithstanding the fact that it is unconfirmed.

■ For the doctrine of collateral estoppel to apply in the instant case, four requirements must be met:

(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and necessarily decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*In re PCH Assoc.*, 949 F.2d 585, 593 (2d Cir.1991). Borchers contends that the second element for collateral estoppel is lacking here: she asserts that there is at least a genuine issue of material fact as to whether the full amount of her damages attributable to Gilbert was "actually litigated and necessarily decided" by the NASD panel.[5] Borchers contends that the arbitration Award did not fully compensate her for all her damages arising from Gilbert's conduct. She asserts that the arbitration panel may have limited its Award of damages to the amount of Gilbert's unjust enrichment. Borchers suggests that because Gilbert was only an account executive, the bulk of the profits from the alleged wrongdoing would have flowed to Drexel rather than to Gilbert; the arbitration panel may have reduced Gilbert's liability on this basis. Indeed, Borchers argues, because Gilbert's attorney speculated to the arbitration panel that damages could still be sought from Drexel in the Bankruptcy proceedings, the panel may have reduced the Award expecting Borchers to recover additional amounts from Drexel. Borchers asserts that the court should have held an evidentiary hearing to determine whether to give preclusive effect to the NASD Award. *Cf. United States v. Diebold,* 369 U.S. 654,

655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1961) (stating that if "contrary inferences" from the evidence might be permissible, summary judgment is inappropriate). Drexel responds that the NASD arbitrators necessarily made a finding as to the amount of damages sustained by Borchers arising from the actions of its employees, and this finding is binding on Borchers in her proof of claim filed against Drexel.

■ Drexel sufficiently established that no genuine issue of material fact existed as to whether the full amount of Borchers' damages attributable to its employees was "actually litigated and necessarily decided" by the NASD panel. The NASD Award clearly assessed the full damages suffered from the action of the Drexel employees. Borchers sought the full extent of her damages in the arbitration proceeding, and the scope of the preclusive effect of an arbitration award is determined by the issues presented by the claimant in arbitration. *See Norris v. Grosvenor Marketing Ltd.,* 803 F.2d 1281, 1286 (2d Cir.1986).[6] Borchers' NASD Statement of Claim sought damages for "*all* losses sustained" and rescission. The NASD Award states that Borchers alleged that Gilbert made unsuitable investments for Borchers' account, churned her account, failed to advise her of the risks of the investment, violated Section 12 of the Securities Act, and committed other state law violations. NASD Award, *In re Arbitration Between Borchers and Smith, Barney, Harris, Upham & Co., Inc.,* Case No. 90–00931 (Oct. 22, 1991) (reproduced at A.104). She sought damages in the amount of $895,000, rescission, and punitive damages. *Id.* Borchers did not reduce her demand for damages when the arbitra-

---

**5.** Borchers does not contest that collateral estoppel may apply even though Drexel was dismissed as a party from the arbitration proceedings. Federal courts have long recognized the use of defensive collateral estoppel, and mutuality of parties is not required. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 326–328, 91 S.Ct. 1434, 1441–1443, 28 L.Ed.2d 788 (1971).

**6.** In *Norris v. Grosvenor Marketing Ltd.,* plaintiffs sought broader damages than those obtained in a satisfied arbitration award against the defendant's agent. 803 F.2d 1281 (2d Cir.1986). The

agent's principal (defendant in the action) obtained summary judgment based on the collateral estoppel effect of the arbitration award. The Second Circuit upheld summary judgment based on collateral estoppel, and held whatever issues the claimant presented to the arbitrators were precluded from retrial:

[H]aving himself framed the issues, he cannot now avoid them.
[Plaintiff] was given his opportunity to argue his case to the arbitrator. He should not be given another bite of the cherry.

*Id.* at 1286 (quotations omitted).

tion was stayed as to Drexel, and she maintained her claim for the full amount of damages. The NASD arbitration decision explicitly stated it was "in full and final resolution of the issues submitted for determination."

██ Moreover, there is no factual support or legal authority for the proposition advanced by Borchers that the arbitration panel limited her damages to Gilbert's unjust enrichment. The proper basis for damages for churning is "the amount of commissions, fees, interest, and taxes paid to the defendant because of the illegal activity." *Zaretsky v. E.F. Hutton*, 509 F.Supp. 68, 73 (S.D.N.Y.1981). *Zaretsky* does not suggest that the liability of either an individual broker or the brokerage firm would be capped by that defendant's own earnings on the excessive trading.[7] The measure of damages for unsuitability claims is the plaintiff's gross economic loss, adjusted for the overall market's performance. *Rolf v. Blyth Eastman Dillon & Co.*, 570 F.2d 38, 49 (2d Cir.) (explicitly rejecting district court's "quasi-contractual" measure of damages in unsuitability case), *opinion amended by* 1978 WL 4098 (2d Cir. May 22, 1978), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).[8]

There is no question that the arbitrators determined Borchers' total loss attributable to the conduct of Drexel's employees because it determined the Award to be made against Gilbert after taking "into consideration the fact and amount" of Borchers' settlement with Strainer and Smith Barney. The arbitration panel's Award necessarily incorporates the finding that Borchers incurred only $100,000 in total damages, and that an Award in the amount of $40,000 against Gilbert, added to the $60,000 received in settlement

with Strainer and Smith Barney, satisfied her claims in full. There is no evidence that the arbitration panel limited her recovery in any way.

If the NASD arbitration panel improperly determined Borchers' damages, Borchers' remedy was to move to vacate the Award. Borchers clearly had an opportunity to litigate this issue to its conclusion. *Hammerman v. Peacock*, 654 F.Supp. 71, 73 (D.D.C. 1987) (finding N.A.S.D. arbitration provided plaintiff with a full and fair opportunity to litigate claims, justifying the use of collateral estoppel). Borchers chose not to contest the Award when made. She cannot relitigate the issue of her damages a second time.

To prevail on its affirmative defense of collateral estoppel, Drexel had the burden of proof to establish that the total damages resulting from Gilbert's conduct were "necessarily and actually" litigated in the NASD arbitration. Drexel has met that burden. The NASD Award simply is not open to conflicting interpretations that should have been resolved in Borchers' favor under Fed. R.Civ.P. 56. *Cf. American Int'l Group, Inc. v. London American Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) ("The courts should resolve all ambiguities and draw all inferences against the moving party"). Borchers' proposed alternative readings of the NASD Award do not satisfy her burden of opposing a motion for summary judgment under Rule 56(e). *Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292 (2d Cir.1990) ("A party opposing a motion for summary judgment must set forth specific facts demonstrating the existence of a genuine issue of fact.") The NASD Award fully compensated Borchers for damages resulting from Gilbert's wrongdoing, and NASD Award collat-

---

**7.** Courts often impose liability on a stockbroker for the full amount of plaintiff's churning and unsuitability losses even though the stockbroker shared the fruits of the violations with the brokerage firm (commissions) or the benefit went entirely to the brokerage firm (fees, margin interest). *See, e.g., Henricksen v. Henricksen*, 640 F.2d 880, 884 (7th Cir.) (stockbroker jointly liable for liable for total commissions and margin interest payments), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981).

**8.** The Supreme Court has stated that in some instances, where "the defendant received more

than the seller's actual loss ... damages are the amount of the defendant's profit" to prevent unjust enrichment. *Randall v. Loftsgaarden*, 478 U.S. 647, 663, 106 S.Ct. 3143, 3152, 92 L.Ed.2d 525 (1986) (holding that tax benefits received by plaintiff in securities transaction should not be deducted from damage award under § 10(b) of Exchange Act or § 12(2) of Securities Act). However, this rule does not support the converse proposition that a plaintiff's damages are *limited* to the *lesser* of its losses or the defendant's profits.

erally estops Borchers from seeking damages from Drexel based on Gilbert's conduct.

Borchers does not contest the fact that all the damages she sustained were the result of Gilbert's wrongdoing. In her proof of claim against Drexel, she seeks damages for excess commissions, wrongful margin interest, and portfolio loss. All these damages were caused by and were the result of Gilbert's conduct. In her claim against Drexel, she seeks to hold Drexel liable for Gilbert's actions on a theory of controlling person liability under the federal securities laws, 15 U.S.C. § 77o and 15 U.S.C. § 78t, or respondeat superior. However, the NASD Award already compensated her for her damages due to Gilbert's acts, and she cannot recover further from Drexel:

> [W]here the legal relationship between two parties establishes vicarious liability for one party based on the acts of the other, a suit against either of the parties will foreclose a subsequent action against the other.

*Murray v. Dominick Corp. of Canada, Ltd.,* 631 F.Supp. 534, 537 (S.D.N.Y.1986).

Borchers next contends that even if the Bankruptcy Court correctly found that Borchers was precluded from seeking damages from Drexel based on Gilbert's conduct, Borchers was not precluded from seeking damages from Drexel based on the conduct of Gilbert's supervisor Strainer. Borchers notes that the arbitration panel specifically stated that its decision did not address Drexel's or Strainer's liability. Borchers contends that Strainer was a primary wrongdoer in his own right, and that the NASD Award did not compensate Borchers for her injuries resulting from Strainer's primary wrongdoing.[9] Borchers asserts that Strainer agreed to supervise her investments but "was indifferent to whether they were suitable." Further, Strainer assured her that her investments were doing well after Borchers' attorney alerted her about her margin position. According to Borchers, Strainer's misconduct injured Borchers directly in that she might have withdrawn her money from the unsuitable accounts or cut back her margin position—or even sought timely correction from a then-viable Drexel, Burnham, Lambert, Inc.—but for Strainer's misrepresentations. Borchers claims these damages are in addition to anything done by Gilbert.

Strainer's liability is entirely derivative of the conduct of Gilbert. Although Strainer may have been directly liable to Borchers, Borchers fails to establish how Strainer caused additional damages distinct from those caused by Gilbert. Borchers states three bases of Strainer's liability: failure to supervise Gilbert, aiding and abetting Gilbert, and falsely inducing Borchers to maintain her unsuitable investments with Gilbert. Any damages for failure to supervise Gilbert or aiding and abetting Gilbert would be coextensive with the damages caused by Gilbert. The sole result of Strainer's alleged misrepresentations or "hand-holding"—the last stated ground of Strainer's "independent" liability—was that Borchers continued to invest through Gilbert, whereby she suffered losses. No matter how many people or entities might be liable for Borchers' damages, all her damages arise from the conduct of Gilbert. The NASD arbitration panel determined the full amount of Borchers' losses arising from Gilbert's conduct. Borchers has been fully compensated for all her losses and cannot seek additional damages from Drexel.

Accordingly, the Bankruptcy Court's order is

**AFFIRMED.**

---

9. Borchers notes that Strainer's settlement does not insulate Drexel from liability for Strainer's failure to supervise Gilbert and Strainer's agreement to Gilbert's conduct. This is true, but irrelevant, because Drexel does not contend that this settlement estops Borchers from seeking damages from Drexel for Strainer's conduct. Rather, Drexel seeks to rely on the arbitration panel's determination to show that Borchers has been fully compensated for all her losses. The NASD arbitration panel determined the total damages caused by Gilbert and decided that an award of $40,000 against Gilbert, added to Borchers' $60,000 settlement with Strainer and Smith Barney, would fully compensate her.